HATHAWAY, J.
In this case, we review whether defendant was properly charged with resisting and obstructing a police officer under MCL 750.81d after defendant struggled with officers who had entered his home *41 unlawfully. To resolve this issue, we must address whether MCL 750.81d abrogates the common-law right to resist illegal police conduct, including unlawful arrests and unlawful entries into constitutionally protected areas. We conclude that the statute did not abrogate this right.
While the Legislature has the authority to modify the common law, it must do so by speaking in “no uncertain terms.”[1] Neither the language of MCL 750.81d nor the legislative history of this statute indicates with certainty that the Legislature intended to abrogate the common-law right to resist unlawful arrests or other invasions of private rights. We cannot presume that the Legislature intended to abrogate this right. Therefore, we overrule People v Ventura, 262 Mich App 370; 686 NW2d 748 (2004), to the extent that it held that the Legislature affirmatively chose to modify the traditional common-law rule that a person may resist an unlawful arrest. Because the Court of Appeals in this case relied on Ventura and extended its holding to the context of illegal entries of the home, we reverse the judgment of the Court of Appeals and remand this matter to the trial court. On remand, we instruct the trial court to grant defendant’s motion to quash the charges on the basis of its ruling that the officers’ conduct was unlawful.
I. FACTS AND PROCEDURAL HISTORY
This case arises from a physical struggle that occurred between defendant and two Holland police officers when the officers sought to enter defendant’s home without a warrant. As a result of the struggle, defen *42 dant was charged with resisting and obstructing a police officer and resisting and obstructing a police officer causing injury in violation of MCL 750.81d (1) and (2).
On the morning of the incident, Officer Troy DeWys and Officer Matthew Hamberg were searching for Shane Adams. Adams had several outstanding warrants. Defendant’s house was in the immediate vicinity of where Adams’s vehicle was parked, so the officers knocked on defendant’s front and back doors to inquire about Adams. While outside the house, Officer DeWys heard voices and people running inside the house. He identified himself as a police officer and stated that he wanted to ascertain the identities of the people inside the house. Officer Hamberg looked through a basement window and could see empty bottles of alcohol and people trying to hide.
Approximately 15 minutes after the officers had knocked on the doors, Mandy McCarry opened the front door. Officer DeWys smelled “intoxicants and burnt marijuana.” McCarry admitted that underage persons were consuming alcohol inside the house, but Officer DeWys told her that he was not interested in writing “a bunch of minor in possession tickets.” Officer DeWys told McCarry that he just wanted to identify who was inside the house. Officer DeWys asked McCarry if she knew the owner of the vehicle parked in the street. McCarry asked the officers if they were looking for Adams and stated that he was not inside the house. McCarry told the officers that they could not come inside the house without a warrant.
Officer DeWys then informed McCarry that the officers were entering the house to “secure it” while they waited for a warrant. At that time, defendant came to the front door and demanded that the officers obtain a *43 warrant before entering his house. Defendant then attempted to close the door, but Officer Hamberg put his shoulder against the door to prevent defendant from closing it. A struggle ensued between defendant and the officers. Ultimately, the officers pulled defendant from his doorway, physically subdued him, and arrested him. Officer DeWys suffered a torn hamstring and bruised elbow in the struggle.
Defendant was charged with assaulting, resisting, or obstructing a police officer, MCL 750.81d(l), and assaulting, resisting, or obstructing a police officer causing injury, MCL 750.81d(2). Defendant was bound over for trial. He moved to quash the charges, arguing that the officers’ entry into his home was unlawful. The trial court concluded that the officers had unlawfully entered defendant’s home, specifically ruling that there were no exigent circumstances that would have provided an exception to the warrant requirement. Nevertheless, the trial court concluded that a “lawful” action by an officer is not a requirement of MCL 750.81d and, therefore, denied defendant’s motion to quash the charges.
Defendant appealed as of right. The Court of Appeals affirmed the trial court’s decision in an unpublished opinion per curiam.[2] The Court of Appeals relied on Ventura for the proposition that the lawfulness of police conduct is no longer an element of the offenses of resisting and obstructing because MCL 750.81d abrogated the common-law right to resist an unlawful arrest.[3] Therefore, the Court of Appeals concluded that the officers’ conduct in forcibly entering defendant’s home did not have to be lawful in order for defendant to *44 be charged under MCL 750.81d.[4] This Court granted defendant’s application for leave to appeal.[5]
II. STANDARD OF REVIEW
This case involves the interpretation and application of a statute, which is a question of law that this Court reviews de novo.[6]
III. ANALYSIS
A. THE LANGUAGE OF MCL 750.81d DOES NOT SUPPORT ABROGATION
The issue before this Court is whether a person present in his or her own home can resist a police officer who unlawfully and forcibly enters the home or whether MCL 750.81d prohibits resisting unlawful actions by a police officer. Specifically, we must decide whether the Legislature intended to abrogate the common-law right to resist an unlawful arrest with its 2002 enactment of MCL 750.81d.
MCL 750.81d states in pertinent part:
(1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fíne of not more than $2,000.00, or both.
(2) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or *45 her duties causing a bodily injury requiring medical attention or medical care to that person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.
(3) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a serious impairment of a body function of that person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.
(4) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing the death of that person is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.
(7) As used in this section:
(a) “Obstruct” includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.
When interpreting statutes, this Court must “ascertain and give effect to the intent of the Legislature.”[7] The words used in the statute are the most reliable indicator of the Legislature’s intent and should be interpreted on the basis of their ordinary meaning and the context within which they are used in the statute.[8] In interpreting a statute, this Court avoids constructions that would render any part of the statute surplus-age or nugatory.[9]
*46 In addition to these basic rules of statutory interpretation, this Court must also adhere to the traditional rules concerning abrogation of the common law. The common law remains in force unless it is modified.[10] We must presume that the Legislature “know[s] of the existence of the common law when it acts.”[11] Accordingly, this Court has explained that “[t]he abrogative effect of a statutory scheme is a question of legislative intent”[12] and that “legislative amendment of the common law is not lightly presumed.”[13] While the Legislature has the authority to modify the common law, it must do so by speaking in “ ‘no uncertain terms.’ ”[14] Moreover, this Court has held that “statutes in derogation of the common law must be strictly construed” and shall “not be extended by implication to abrogate established rules of common law.”[15] In this case, we must be mindful of the rules regarding abrogation of the common law when determining whether the Legislature, in enacting MCL 750.81d, intended to abrogate the common-law right to resist unlawful police conduct.
Defendant was charged with resisting and obstructing a police officer in violation of MCL 750.81d. In Michigan, obstructing a police officer has been recognized as a common-law crime, as well as an offense governed by statute.[16] In addition, the right to resist unlawful arrests, and other unlawful invasions of pri *47 vate rights, is well established in our state’s common law.[17] In explaining the common-law right to resist an unlawful arrest, this Court has stated that “one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest” and that “the basis for such preventive or resistive action is the illegality of an officer’s action, to which [a] defendant immediately reacts.”[18]
In Ventura, the Court of Appeals compared the prior version of the resisting-arrest statute, MCL 750.479, to the current version, MCL 750.81d. The prior version stated in pertinent part:
Any person who shall knowingly and willfully... obstruct, resist, oppose, assault, beat or wound. .. any ... person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor .... [MCL 750.479, as enacted by 1931 PA 328.]
Noting that the prior version, MCL 750.479, included a reference to the lawfulness of an officer’s actions, the Court of Appeals in Ventura then turned to the language of MCL 750.81d.[19] The Court stated that it could not find any similar reference to lawfulness in MCL 750.81d.[20] The Court also noted that other jurisdictions have found the right to resist an unlawful arrest to be *48 “outmoded in our contemporary society.”[21] The Court concluded that the Legislature had made an “obvious affirmative choice to modify the traditional common-law rule that a person may resist an unlawful arrest.”[22] We disagree. We hold that MCL 750.81d did not abrogate the right to resist unlawful police conduct and that Ventura was wrongly decided.
A fundamental principle of statutory construction is that common-law meanings apply unless the Legislature has directed otherwise.[23] If the Legislature intended to abrogate the common-law right to resist unlawful conduct by an officer, it had to do so by speaking in “ ‘no uncertain terms.’ ”[24] Significantly, nowhere in MCL 750.8Id does the Legislature state that the right to resist unlawful conduct by an officer no longer exists.[25]
*49 The prior resisting-arrest statute, MCL 750.479 as enacted by 1931 PA 328, prohibited obstructing or resisting a person “authorized by law to maintain and preserve the peace, in their lawful acts . . . .”[26] The current resisting-arrest statute, MCL 750.81d, prohibits obstructing or resisting an “individual” who is “performing his or her duties.” We cannot conclude that the common-law right to resist an unlawful act by an officer ceased to exist merely because the Legislature did not include the word “lawful” in this phrase from MCL 750.81d. In fact, this Court has recently clarified that the Legislature’s failure to expressly provide for a common-law defense in a criminal statute does not prevent a defendant from relying on that defense.[27]
In People v Dupree, this Court addressed whether a defendant could properly raise the common-law affirmative defense of self-defense when charged under the felon-in-possession statute, MCL 750.224f.[28] The felon-in-possession statute does not explicitly indicate that self-defense is an available defense to this charge. Nevertheless, this Court clarified that “[t]he Legislature’s failure to provide explicitly for the common law affirmative defense of self-defense does not foreclose *50 defendants from relying on it to justify a violation of MCL 750.224f.”[29] Specifically, this Court explained that “[historically, in cases in which the statutory provision did not squarely resolve the issue before this Court, we have applied the common law, presuming that the Legislature enacted statutes mindful of those aspects of common law that have become ‘firmly embedded in our jurisprudence . .. ”[30] This Court went on to explain that “[m]ore recently, the United States Supreme Court recognized the interrelated nature of criminal statutes and the common law, stating that legislative bodies enact criminal statutes ‘against a background of Anglo-Saxon common law . .. .’ ”[31] Finding this rationale instructive, this Court concluded that
[a]bsent some clear indication that the Legislature abrogated or modified the traditional common law affirmative defense of self-defense for the felon-in-possession charge in MCL 750.224Í or elsewhere in the Michigan Penal Code, we presume that the affirmative defense of self-defense remains available to defendants if supported by sufficient evidence.[32]
In the context of resisting or obstructing an officer, there must be some clear indication in MCL 750.81d that the Legislature abrogated the common-law right to resist an officer’s unlawful conduct if this Court is to so hold. This Court has recognized that “ ‘[t]he obstruction of or resistance to a public officer in the performance of his duties is an offense at common law, and by statute in all jurisdictions.’ ”[33] MCL 750.81d expressly *51 defines “obstruct” as a “knowing failure to comply with a lawful command.”[34] However, the decision of the Court of Appeals in this case conflicts with the statutory language. The Court held that MCL 750.81dprohibits a person from resisting an officer’s unlawful conduct, yet the statute allows a person to obstruct an officer’s unlawful command. This conflict casts substantial doubt on the argument that the Legislature intended, let alone “clearly intended,” to abrogate the common-law right to resist an unlawful arrest by not including the phrase “in their lawful acts” in MCL 750.81d.
Based on the plain language of MCL 750.81d, and without any certain indication otherwise by the Legislature, we cannot simply assume that the Legislature intended to abrogate the common-law right to resist an unlawful arrest with its enactment of MCL 750.81d. Such an interpretation of the statute would be inconsistent with this Court’s rules of statutory construction when abrogation of the common law is at issue.
In this case, the Court of Appeals held that “[t]he fact that defendant refused entry to the officers unless they obtained a search warrant is indicative of defendant’s knowledge of their status as police officers and that they were engaged in the performance of their official duties.”[35] There is no question that defendant knew that the men at his door were police officers. However, the officers wanted to enter defendant’s home without a warrant, and one of the officers physically prevented defendant from closing the door to his home. Accordingly, defendant’s refusal to allow the officers into his home is not conclusive of whether defendant had reasonable cause to know that the officers were “engaged in the performance of their official duties.” Consistently *52 with the common-law rule, we conclude that the prosecution must establish that the officers’ actions were lawful.
B. THE LEGISLATIVE HISTORY OF MCL 750.81d DOES NOT SUPPORT ABROGATION
The legislative history of MCL 750.81d is also helpful in demonstrating that that the Legislature did not intend to abrogate the right to resist an unlawful act by an officer. However, this history must be reviewed in conjunction with the history of the corresponding statute, MCL 750.479. Before 2002, it was clear that a person had the right to resist unlawful police conduct. The pre-2002 version of MCL 750.479 governed the offense of resisting and obstructing and generally prohibited resisting an officer discharging his or her duties.[36] This Court interpreted the former version of MCL 750.479 as including the Michigan common-law principle that “one may use such reasonable force as is *53 necessary to prevent an illegal attachment and to resist an illegal arrest. . . .”[37] Thus, the former version of MCL 750.479 included the right to resist unlawful police conduct.
In 2002, the Legislature passed House Bill 5442, amending the prior version of MCL 750.479.[38] Simultaneously, the Legislature enacted House Bill 5440 as 2002 PA 266, which added MCL 750.81d. Both bills contained reciprocal language providing that each would not take effect unless both were enacted into law.[39] The amended version of MCL 750.479 no longer prohibits a person from resisting “persons authorized by law to maintain and preserve the peace,” but is *54 instead targeted at prohibiting threatening and dangerous conduct toward a list of enumerated persons connected with law enforcement.[40] The statute provides a tiered penalty structure for various degrees of danger posed and harm caused to a person protected by the statute,[41] clarifies that a person can be charged with and convicted of an underlying offense, and provides courts with discretion to impose a sentence for violating this statute that must be served consecutively to any sentence for an offense arising out of the same transaction.[42] Further, the statute defines the term “obstruct” as including “the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.”[43]
Meanwhile, MCL 750.81d focuses on prohibiting dangerous and threatening conduct toward a “person” protected by the statute.[44] This includes resisting an officer’s actions. The statute expressly enumerates the law enforcement officials and other emergency responders who are protected and requires that an individual have reason to know that his or her conduct is directed toward a person “performing his or her duties.”[45] Like MCL 750.479, MCL 750.81d provides a tiered penalty structure for various degrees of danger posed and harm caused to a person protected by the statute,[46] clarifies that a person can be charged with and convicted of an underlying offense, and provides courts with discretion *55 to impose a sentence for violating the statute that must be served consecutively to any sentence for an offense arising out of the same transaction.[47] Further, just like MCL 750.479, MCL 750.81d defines the term “obstruct” as including “the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.”[48] As evidenced by the language of these two statutes, it is clear that the Legislature changed some, but not all, aspects of the common law governing the offenses of resisting and obstructing a peace officer.[49] The Legislature made these changes using language that clearly set forth the changes it intended to make.
In contrast, the Legislature expressed no intent to do away with the common-law right to resist an unlawful arrest.[50] The most that could be said in favor of finding *56 an abrogation of that right is the omission of the phrase “in their lawful acts” from MCL 750.81d. However, similar language regarding lawful acts was included in both MCL 750.81d and the amended version of MCL 750.479. Both statutes now include language that this Court has used in the past to explain that the common-law offense of obstructing or resisting an officer occurs while the protected person is “performing his or her duties.” The term “duty” generally means “something that one is expected or required to do by moral or legal obligation”[51] and legally implies “an obligation one has by law or by contract.”[52] MCL 750.479 and MCL 750.81d both imply that the charged person “knows or has reason to know” that a protected individual is “performing his or her duties” when engaging in conduct authorized by law or required by legal obligation.[53] Thus, the Legislature retained the concept that the offense of resisting and obstructing requires that an officer’s actions are lawful.
*57 This Court has explained that if there is doubt about whether a statute abrogates established common-law rules, the statute shall he “ ‘given the effect which makes the least rather than the most change in the common law.’ ”[54] Nevertheless, without any certain indication of the Legislature’s intent to abrogate the common-law right to resist an unlawful arrest, the Court of Appeals in Ventura pronounced that it was “adopting] the modern rule that a person may not use force to resist an arrest made by one he knows or has reason to know is performing his duties regardless of whether the arrest is illegal under the circumstances of the occasion.”[55] However, we find nothing in the language or legislative history of this statute to support this conclusion. Therefore, we simply cannot conclude that the Legislature abrogated the common-law right to resist unlawful invasions of private rights in “no uncertain terms.”
Accordingly, we overrule Ventura to the extent that it concluded that the common-law right to resist an unlawful arrest was abrogated by MCL 750.81d.
IV CONCLUSION
While the Legislature has the authority to modify the common law, it must do so by speaking in “no uncertain *58 terms.”[56] Neither the language of MCL 750.81d nor the legislative history of this statute indicates with certainty that the Legislature intended to abrogate the common-law right to resist unlawful arrests or other unlawful invasions of private rights. We cannot presume that the Legislature intended to abrogate this right. Therefore, we overrule Ventura to the extent that it held that the Legislature affirmatively chose to modify the traditional common-law rule that a person may resist an unlawful arrest.[57]
Because the Court of Appeals in this case relied on Ventura and extended its broader principle to the context of unlawful entry of the home, we reverse the judgment of the Court of Appeals and remand this matter to the trial court. On remand, we instruct the trial court to grant defendant’s motion to quash the charges on the basis of its ruling that the officers’ conduct was unlawful.
Cavanagh, Marilyn Kelly, Mary Beth Kelly, and ZAHRA, JJ., concurred with HATHAWAY, J.

 Hoerstman Gen Contracting, Inc v Hahn, 474 Mich 66, 74; 711 NW2d 340 (2006).

 People v Moreno, unpublished opinion per curiam of the Court of Appeals, issued June 10, 2010 (Docket No. 294840).

 Id. at 7-8.

 Id. at 7.

 People v Moreno, 488 Mich 1010 (2010).

 People v Lee, 489 Mich 289, 295; 803 NW2d 165 (2011); Miller-Davis Co v Ahrens Constr, Inc, 489 Mich 355, 361; 802 NW2d 33 (2011).

 People v Koonce, 466 Mich 515, 518; 648 NW2d 153 (2002).

 People v Morey, 461 Mich 325, 330; 603 NW2d 250 (1999).

 People v McGraw, 484 Mich 120, 126; 771 NW2d 655 (2009), citing Baker v Gen Motors Corp, 409 Mich 639, 665; 297 NW2d 387 (1980).

 Wold Architects & Engineers v Strat, 474 Mich 223, 233; 713 NW2d 750 (2006).

 Id. at 234; see also Dawe v Dr Reuven Bar-Levav & Assoc, PC, 485 Mich 20, 28; 780 NW2d 272 (2010) (quoting Wold Architects).

 Dawe, 485 Mich at 28.

 Wold Architects, 474 Mich at 233.

 Dawe, 485 Mich at 28, quoting Hoerstman, 474 Mich at 74.

 Rusinek v Schultz, Snyder & Steele Lumber Co, 411 Mich 502, 508; 309 NW2d 163 (1981) (citation omitted).

 People v Krum, 374 Mich 356, 361-362; 132 NW2d 69 (1965).

 Id., People v Clements, 68 Mich 655, 658; 36 NW 792 (1888) (recognizing the right to reasonably resist an attempted illegal seizure of property by the sheriff and noting that “[n]o officer can be legally authorized to invade private rights in any such manner”); People v MacLeod, 254 Mich App 222, 226; 656 NW2d 844 (2002) (holding that the lawfulness of the arrest was an element of the prior resisting-and-obstructing statute).

 Krum, 374 Mich at 361.

 Ventura, 262 Mich App at 374-375.

 Id. at 375.

 Id. at 376 (citation and quotation marks omitted).

 Id. at 376-377.

 People v Young, 418 Mich 1, 15; 340 NW2d 805 (1983); see also Const 1963, art 3, § 7 (“The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.”).

 Dawe, 485 Mich at 28, quoting Hoerstman, 474 Mich at 74.

 The Legislature is aware of how to draft statutes when it is abrogating common-law principles. For example, in the context of self-defense, the Legislature changed the common-law duty to retreat by enacting MCL 780.972, which specifically explains that there is no longer a duty to retreat under certain enumerated circumstances. The Legislature also enacted MCL 780.973 and MCL 780.974, which explicitly clarify that certain other aspects of the common law relating to self-defense were not abrogated. In enacting MCL 750.81d, the Legislature could have easily abrogated the right to resist an unlawful act by an officer by simply stating that the provision could be violated regardless of whether an officer’s actions are lawful. The Legislature chose not to include such language.
Nevertheless, the dissent reasons that because MCL 750.81d does not include a “ ‘lawful acts’ proviso,” the Legislature “clearly” and “in no uncertain terms” abrogated the common law and excluded the lawfulness *49 of a police officer’s conduct as an element of resisting an officer. The dissent relies on a footnote in Reed v Breton, 475 Mich 531, 539 n 8; 718 NW2d 770 (2006), explaining that the mere absence of language specifically abrogating the common law does not necessarily mean that no abrogation occurred. However, nothing in Heed changes the longstanding rule that the Legislature must speak in no uncertain terms when it intends to abrogate the common law, and Reed does not support the dissent’s position that the mere absence of language is somehow the same as the presence of “no uncertain terms.”

 We note that while MCL 750.479 was amended by 2002 PA 270, it has not been repealed and remains an alternative statute under which resisting and obstructing may be charged.

 People v Dupree, 486 Mich 693, 705; 788 NW2d 399 (2010).

 Dupree, 486 Mich at 705.

 Id.

 Id., quoting Garwols v Bankers Trust Co, 251 Mich 420, 424; 232 NW 239 (1930).

 Dupree, 486 Mich at 705, quoting United States v Bailey, 444 US 394, 415 n 11; 100 S Ct 624; 62 L Ed 2d 575 (1980).

32 Dupree, 486 Mich at 706.

 Krum, 374 Mich at 361 (emphasis added; citation omitted).

 MCL 750.81d(7)(a) (emphasis added).

 Moreno, unpub op at 5.

 The former version of MCL 750.479 provided:
Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or who shall resist any officer in the execution of any ordinance, by law, or any rule, order or resolution made, issued, or passed by the common council of any city board of trustees, or common council or village council of any incorporated village, or township board of any township or who shall assault, beat or wound any sheriff, coroner, township treasurer, constable or other officer duly authorized, while serving, or attempting to serve or execute any such process, rule or order, or for having served, or atempted [sic] to serve or execute the same, or who shall so obstruct, resist, oppose, assault, beat or wound any of the above named officers, or any other person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years, or by a fine of not more than 1,000 dollars.

 Krum, 374 Mich at 361.

 MCL 750.479 now provides in pertinent part:
(1) A person shall not knowingly and willfully do any of the following:
(a) Assault, hatter, wound, obstruct, or endanger a medical examiner, township treasurer, judge, magistrate, probation officer, parole officer, prosecutor, city attorney, court employee, court officer, or other officer or duly authorized person serving or attempting to serve or execute any process, rule, or order made or issued by lawful authority or otherwise acting in the performance of his or her duties.
(b) Assault, batter, wound, obstruct, or endanger an officer enforcing an ordinance, law, rule, order, or resolution of the common council of a city hoard of trustees, the common council or village council of an incorporated village, or a township board of a township.

 The arguments offered for passing these bills were to protect persons in all professions connected to law enforcement instead of only peace officers and to establish a tiered penalty structure based on the seriousness of the injury actually inflicted. The bills were to provide uniformity of punishment and consolidate all provisions relating to attacks on law enforcement personnel, firefighters, and emergency medical personnel into one section of the law. House Legislative Analysis, HB 5440 through 5443 and 5601, August 29, 2002, p 5.

 MCL 750.479(l)(b) retains the prohibition in the former version of the statute against threatening and dangerous conduct toward officers enforcing municipal law.

 MCL 750.479(2) through (5).

 MCL 750.479(6) and (7).

 MCL 750.479(8)(a).

 MCL 750.81d(7)(b).

 MCL 750.81d(l) through (4).

 Id.

 MCL 750.81d(5) and (6).

 MCL 750.81d(7)(a).

 MCL 750.479 and MCL 750.81d together now prohibit certain conduct against peace officers and additional persons connected to law enforcement, and they include tiered penalty structures for the various degrees of danger posed and harm caused to these persons. In these statutes, the Legislature clarified that a person can be charged with an underlying crime. The Legislature also abrogated the common-law rule of presumed concurrent sentencing by expressly providing for consecutive sentencing for all offenses arising out of the same transaction.

 When legislatures from other states intended to do away with this common-law right, they found clear and unequivocal language to accomplish their task. For example, a Delaware statute makes it abundantly clear that “[t]he use of force is not justifiable under this section to resist an arrest which the defendant knows or should know is being made by a peace officer, whether or not the arrest is lawful.” Del Code Ann, tit 11, § 464(d) (emphasis added). A Texas statute clearly provides that “[i]t is no defense to prosecution under this section that the arrest or search was unlawful.” Tex Penal Code Ann 38.03(b). An Oregon statute, Or Rev Stat 161.260, which is similar to MCL 750.81d, expressly provides, “A person may not use physical force to resist an arrest by a peace officer who is known or reasonably appears to be a peace officer, whether the arrest is lawful or unlawful.” Similarly, an analogous Colorado statute expressly *56 provides: “It is no defense to a prosecution under this section that the peace officer was attempting to make an arrest which in fact was unlawful....” Colo Rev Stat 18-8-103(2).

 Random, House Webster’s College Dictionary (2000).

 Black’s Law Dictionary (6th ed).

 The meaning of this added phrase is not inconsistent with the omitted phrase “in their lawful acts.” This concept was illustrated at oral argument when Justice Cavanagh questioned the prosecutor as follows:
Justice Cavanagh: Can I pose this hypothetical to you? What if you have a situation where you have a male officer performing his duties undertakes a search of a female prisoner and puts his hand inside her pants and commits a CSC [criminal sexual conduct]? Under your just stated interpretation of [MCL 750.]81d and under Ventura’s holding, and assuming she resists — she fights him off, tries to fight him off — she could be charged could she not?
Prosecuting Attorney: No.
Justice Cavanagh: Why?
Prosecuting Attorney: What — what duty is he performing?
Justice Cavanagh: Doing a search.
*57 This exchange illustrates that there is no relevant distinction between the meaning of an officer “performing his or her duties” and an officer engaging in “lawful acts.” Just as an officer acts outside his or her legal duty to perform a search by committing an assault, the officers in this case acted outside their legal duties by unlawfully entering defendant’s home without a warrant.

 Nation v W D E Electric Co, 454 Mich 489, 494; 563 NW2d 233 (1997), quoting Energetics, Ltd v Whitmill, 442 Mich 38, 51; 497 NW2d 497 (1993).

 Ventura, 262 Mich App at 377.

 Hoerstman, 474 Mich at 74.

 Ventura, 262 Mich App at 376-377.