# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHELLE MARIE PELLETIER,

        Defendant-Appellant.

UNPUBLISHED
February 28, 2017

No. 330751
Kalamazoo Circuit Court
LC No. 2015-000784-FH

Before: BORRELLO, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Defendant was convicted after a bench trial of resisting and obstructing, MCL 750.81d(1). She was sentenced to 163 days in jail, with credit for 163 days, and 12 months' probation. Defendant now appeals as of right. We affirm but remand to the trial court to establish a factual basis for the imposed court costs or to alter the amount of costs, if appropriate.

## I. BACKGOUND

This appeal arises from an attempt by local police officers to execute an arrest warrant. Defendant and her sister, Amy Pelletier, lived in a home on Raborn Court in Portage, Michigan. The home had been the subject of eviction proceedings with defendant's mother attempting to evict her children from the home. There also appears to have been a prior police standoff at the home which left one of defendant's brothers dead and the other wounded.

On May 30, 2015, the City of Portage Police Department received a complaint of multiple shots fired at defendant's home. The police had information that Amy and defendant kept "a large cache of guns" in their house and had outstanding warrants for trespass. The police department obtained a search warrant for the residence and deployed the Kalamazoo metropolitan SWAT team. About 20 officers arrived to assist, and the team went to defendant's house around 11:45 p.m. The officers were in uniforms that identified them as police and they brought a large armored vehicle called a Bearcat, which was printed with lettering spelling "Police" and equipped with headlights, spotlights, and blue emergency lights. The Bearcat also had a very loud public announcement (PA) system that could be heard from two or three houses away.

Starting about 11:45 p.m., the SWAT team made a series of announcements using the Bearcat's PA system, which, according to police testimony meant that officers repeatedly

-1-

announced, "police" and "we have a search warrant," and requested that the occupants come out of the house. The police gave commands over the PA system for about an hour, but no sign ever came from inside the house or acknowledged the commands. After about an hour, police attempted to "breach open" the front door of the home using the Bearcat's ram. The Bearcat was able to get the door "cracked open" but was unable to completely remove the door because the Bearcat got stuck in the mud outside the home. After the door was partially opened, the SWAT team continued to give verbal announcements for about 10 minutes, still with no result, prompting police to fire three rounds of non-lethal chemical munitions into the home in an attempt to drive out the occupants.

As police were positioned in the back they saw defendant and her sister flee from the back entrance of the home. After numerous verbal commands to defendant and her sister to get on the ground were unsuccessful, police tossed a device which caused a "loud boom," and brought defendant and her sister to the ground, allowing police to take them into custody.

At trial, defendant testified that she did not comply with the police's orders on May 30, 2015, because she did not believe they were really police officers. Defendant testified that various other suspicious incidents had occurred related to the eviction. For example, defendant testified that she participated in some legal proceedings related to the eviction, but she believed that the trial court judge refused to look at her paperwork and the police were engaged in "suspicious" activity and might "kidnap" her. Defendant also testified that, beginning in February 2013, she and her sister began to see "black hawk helicopters" flying low around the property. Defendant testified that, on one occasion, a helicopter flew very close to where she was standing outside, and she became "really very sick" as a result. According to defendant, a similar incident occurred to her brother when he was outside when a helicopter flew by. Defendant testified that she believed that these incidents were a part of a larger scheme by someone who wanted her mother to sell the house.

Defendant also testified that, on April 1, 2014, some people who "looked like they were from the sheriff's department" arrived at the house in a police vehicle. However, defendant did not believe that the people were real police officers. She testified that she called 911, but the dispatcher refused to send police officers to help her. After her interactions with the 911 dispatcher, defendant concluded that her telephone was "rigged." What is gleaned from defendant's testimony is that any interaction between herself or members of her family and the police were all the result of some conspiracy intended to deprive defendant of her rights.

Defendant testified that, on May 30, 2015, she and her sister were at home taking care of their animals when she heard loud noises and what she believed to be people who were trying to assassinate her. She also saw "a huge monstrous vehicle" outside and bright lights illuminating the front of the house but did not know that the vehicle or the lights belonged to police officers.

The trial court considered the evidence and found as follows:

The issue really is whether or not there's enough evidence that she either resisted, obstructed, or opposed an officer, and whether or not she knew, or had reason to know, that these were officers who were performing their duties. There's no question, based on what's been presented to me, that the officers were performing

the duties that they were responsible for given what they were dispatched to do, and the circumstances they faced. The only issues are her behavior and what she knew or had to know, or had reason to know, I should say.

Ultimately, the trial court concluded:

Whether or not she believed that they were law enforcement officers, it was a lawful command, and that she failed to comply with it. She heard the commands. Um, whether or not she believed they were in fact officers, that's not the point. She had reason to know that they were officers, and she did not comply with the various commands. In particular, those commands outside, while she was near the barn, when officers repeatedly told her to show her hands, get down on the ground, and she didn't do that.

The trial court convicted defendant and sentenced her as indicated above. This appeal then ensued.

On appeal, defendant raises two issues. First defendant argues that there was insufficient evidence to support her conviction. A challenge to the sufficiency of the evidence requires this Court to view the evidence de novo in a light most favorable to the prosecution and determine whether any reasonable fact-finder would be warranted in finding that the essential elements of the crime were proven beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). To convict defendant of resisting and obstructing, the prosecution was required to prove that defendant (1) "assaulted, battered, wounded, resisted, obstructed, opposed, or endangered" a police officer, and that defendant, (2) "knew or had reason to know that" the person was a police officer performing his or her duties. *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). The prosecution is also required to prove that the officer's actions were lawful. *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012).

Viewed in a light most favorable to the prosecution, the testimony in this case was legally sufficient to allow a trier of fact to infer beyond a reasonable doubt that defendant resisted and obstructed police officers. From the testimony we find there was sufficient evidence to enable a rational trier of fact to find the first element for each count, that defendant resisted or obstructed police. As used in the statute, the word "obstruct" includes "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). In this case, the record reflects that defendant knowingly failed to comply with the officers' lawful commands. The record supports that a SWAT team positioned outside defendant's house used a PA system, which was loud enough to be heard from two or three houses away, to make announcements for over an hour. The team repeatedly announced, "police," "we have a search warrant," and requested that the occupants come out of the house. The record reflects that defendant did not comply with the officers' orders to come out of the house. Even after non-lethal gas was deployed into the home, defendant did not exit the house through the front door as requested. Instead, she exited out a back patio and out into the backyard. As defendant walked toward a barn, officers identified themselves as police, told her that she was under arrest, and commanded her to stop and show her hands. The record supports that defendant did not comply with these commands. Defendant was then commanded to take steps toward the officers, and initially started walking toward the officers but changed her mind

-3-

and went back to her position near the barn. The officers ordered defendant to "get on the ground," but she did not comply. Even after defendant and the home's other occupant were hit in the thigh with "less lethal" rounds administered by the officers, she did not comply with orders to get on her stomach. Defendant did not comply until a distraction device was deployed. Viewing this evidence in a light most favorable to the prosecution, this evidence was sufficient for the fact-finder to find that defendant knowingly failed to comply with the officers' lawful commands and therefore resisted or obstructed the police officers.

There was also sufficient evidence for the fact-finder to find that the second element—that defendant knew or had reason to know that the people outside her house were police officers performing their duties—was proven beyond a reasonable doubt. The record supports that about 20 uniformed officers were positioned around defendant's house. They brought a large armored vehicle, which was printed with lettering spelling "Police" and equipped with headlights, spotlights, and blue emergency lights. The officers used a PA system to announce "police" and "we have a search warrant," and to request that the occupants come out of the house. The door was eventually breached open with a ram, and gas was deployed into the house. When defendant finally left the house, officers yelled, "stop police," "you're under arrest," and "let me see your hands." The record supports that defendant heard the officers identify themselves as police and commanded her to stop, show her hands, and take steps toward the police. However, defendant testified that she "didn't just automatically believe that they were doing legal stuff just because they say that they're the police" and was not willing to comply with orders because, "even if they were the police, that I knew that, um, they weren't doing what was right, and I wasn't willing to go along with that." Even if defendant did not actually believe the officers were police officers performing their duties, the record supports that she had reason to know that the people outside her house were police officers performing their duties. This evidence was sufficient for the fact-finder to find the second element of resisting and obstructing.

Finally, a rational fact-finder could find that the officers' actions were lawful.[1] The record reflects that the officers had a search warrant for defendant's residence and that defendant had an outstanding arrest warrant. Thus, a rational fact-finder could find that the officers' actions were lawful. The prosecution's evidence in this case, when viewed in a light most favorable to the prosecution, *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), sufficiently proves beyond a reasonable doubt that defendant committed resisting and obstructing. Accordingly, defendant is not entitled to relief on this issue.

Defendant next argues that the trial court rendered inconsistent verdicts. Judges sitting as triers of fact must render consistent verdicts. *People v Ellis*, 468 Mich 25, 26; 658 NW2d 142 (2003). Inconsistent verdicts occur when the trial court's factual findings "cannot be rationally

---

[1] Defendant argues on appeal that the trial court erroneously failed to consider whether the third element, whether officers' actions were lawful. This argument is without merit. The record reflects that the trial court found that the officers had search and arrest warrants and had the responsibility to affect court orders, thereby concluding that the officers' commands were "lawful."

reconciled" with the verdict. *Id*. at 27. Defendant argues that the trial court's conclusion that she *did not know* that the people outside were law enforcement officers was inconsistent with the conclusion that she *had reason to know* that the commands came from law enforcement officers. At trial, the trial court found that, based on defendant's past experiences, she "may have had some questions in her mind about what was really happening in terms of her being at the home, and her relationship to, um, anyone trying to get her out of the home, or having law enforcement contact with her." The trial court stated, "I'm not going to find that she, in fact, did know, given what she stated, but certainly beyond a reasonable doubt that she had reason to know." These conclusions were not inconsistent. To convict defendant of resisting and obstructing, the prosecution was required to prove that defendant "knew *or had reason to know* that" the person she assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties. *Corr*, 287 Mich App at 503 (emphasis added). This element specifically allows for a trial court to find either that defendant knew that the person was a police officer, or *had reason to know* that the person was a police officer. It is not necessary to find that defendant *actually knew* the person was a police officer. Because the trial court's factual findings can be "rationally reconciled" with the conclusion that defendant had reason to know that the people outside her house were police officers performing their duties, the trial court's verdict was not inconsistent. *Ellis*, 468 Mich at 26. Accordingly, defendant is not entitled to relief on this issue.

Finally, defendant challenges on appeal the sentencing court's imposition of $1,000 in court costs. According to defendant, the court imposed the costs without establishing a factual basis for the costs, restricting her ability to challenge the reasonableness of the costs. Plaintiff concedes error.

As amended, MCL 769.1k(1)(b)(*iii*) applies to all fines, costs, and assessments imposed under MCL 769.1k before June 18, 2014, and after October 17, 2014. Thus, when defendant was sentenced, November 9, 2015, the trial court was authorized to impose any costs reasonably related to the actual costs incurred by the trial court. As defendant argues and the prosecution concedes, the trial court did not establish a factual basis for the imposed costs. There is nothing on the record to provide any reasoning for the $1,000 court costs. Without a factual basis for the court costs, we cannot determine whether the costs were reasonably related to the actual costs incurred by the trial court. Therefore, we remand the case to the trial court to establish a factual basis for the costs or to alter the amount of costs, if appropriate. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015).

Conviction affirmed, but remanded to establish a factual basis for the costs or to alter the costs imposed, if appropriate. We do not retain jurisdiction.


/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Kelly

-5-