*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KENNETH MICHAEL NORDSTROM,

      Defendant-Appellant.

FOR PUBLICATION
May 26, 2026
9:43 AM

No. 375550
Oakland Circuit Court
LC No. 2024-290515-FH

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

GARRETT, J.

Police officers responded to a complaint that defendant, Kenneth Michael Nordstrom, was yelling and possibly intoxicated. When the officers arrived, Nordstrom was lying on the ground with his dog and not engaging in any disruptive conduct. The officers arrested Nordstrom for disturbing the peace, a misdemeanor punishable by up to 90 days' imprisonment. MCL 750.170; MCL 750.504. However, absent circumstances not relevant to this appeal, MCL 764.15(1)(d) and (f) authorize a warrantless arrest for a misdemeanor committed outside an officer's presence only if the misdemeanor is punishable by imprisonment for more than 92 days. Further, as recognized in *People v Moreno*, 491 Mich 38, 57-58; 814 NW2d 624 (2012), a person is entitled to resist an unlawful arrest. Nordstrom appeals by leave granted[1] the trial court's order denying his motion to dismiss the charges against him and quash the felony information. He argues that because he lawfully resisted his unlawful arrest for disturbing the peace, all charges stemming from his unlawful arrest must be dismissed. We agree that the trial court erred by denying Nordstrom's motion with respect to the charge of resisting or obstructing a police officer, MCL 750.81d(1), but disagree that Nordstrom has shown that he is entitled to the dismissal of the charges resulting from his conduct that occurred afterward. Accordingly, we reverse in part and remand for further proceedings.

---

[1] *People v Nordstrom*, unpublished order of the Court of Appeals, entered June 16, 2025 (Docket No. 375550).

# I. FACTUAL BACKGROUND

Officer Luke Krzyzak and Sergeant Cory King of the Wixom Police Department were dispatched to an apartment complex in Wixom to investigate a possible public disturbance. According to the preliminary examination testimony, a 911 caller indicated that a shirtless man with tattoos and a black dog was screaming at women and was possibly intoxicated. The officers arrived at the location and found Nordstrom, who matched the description of the person involved and was accompanied by a black dog. When the officers spotted Nordstrom, he was lying on his side and propping himself up with his arm. He was not engaging in any unlawful or bothersome activity. Officer Krzyzak identified himself and asked Nordstrom his name and what he was doing. Nordstrom appeared to be intoxicated. Instead of answering Officer Krzyzak's questions, Nordstrom asked questions of Officer Krzyzak, but he ultimately identified himself. According to Officer Krzyzak, the officers detained Nordstrom for "possible disturbing the peace" until they could obtain a written statement from the 911 caller. Sergeant King testified that the officers took Nordstrom into custody for "disorderly and disturbing the peace."

The officers handcuffed Nordstrom and patted him down before standing him up. They then walked him over to a patrol vehicle, intending to place him inside the vehicle. While walking to the vehicle, Nordstrom expressed that he would not go and asked the officers why they were there. After arriving at the vehicle, the officers attempted another pat-down search, but Nordstrom twisted and turned away from them, pushed back against them, and ignored instructions to remain still and cooperate. The officers were eventually able to force Nordstrom inside the patrol vehicle.

At the police station, Nordstrom failed to cooperate with another pat-down search and was placed in a holding cell. Once the cell door closed, Nordstrom produced three $1 bills that he still had on his person. The officers entered the cell to retrieve the cash, which Nordstrom eventually handed over. After Sergeant King turned to exit the cell, Nordstrom charged toward him. Officer Krzyzak stepped between Nordstrom and Sergeant King and a struggle ensued involving the three men. During the altercation, Nordstrom bit Officer Krzyzak's left hand, and Officer Krzyzak suffered a broken right arm. Nordstrom also grabbed Sergeant King's body camera and tore it from a clip that secured the camera to Sergeant King's vest, breaking the clip. The officers were ultimately able to subdue Nordstrom. Thereafter, while being transported to the hospital for medical attention, Nordstrom bit the forearm of one of the paramedics.

As previously stated, the prosecution charged Nordstrom with disturbing the peace and resisting or obstructing a police officer. The prosecution also charged Nordstrom with resisting or obstructing a police officer causing serious impairment, MCL 750.81d(3); malicious destruction of police property, MCL 750.377b; and assaulting an emergency medical service technician, MCL 750.81d(1). At his preliminary examination, Nordstrom argued that he lawfully resisted his unlawful arrest because the conduct giving rise to his arrest for disturbing the peace, a 90-day misdemeanor, was committed outside the police officers' presence. The district court bound Nordstrom over as charged, finding that he was lawfully detained during the officers' investigation and "things unraveled from there."

In the circuit court, Nordstrom moved to dismiss the charges and quash the information, again arguing that he lawfully resisted an unlawful arrest. The prosecutor argued that the arrest was objectively reasonable even if the officers did not articulate the correct legal basis for the

arrest. She asserted that Nordstrom appeared intoxicated, asked the officers a lot of questions, and was not cooperative. She maintained, "At that point, there was probable cause to arrest him for a disorderly person [sic]." The trial court denied Nordstrom's motion on the basis that Nordstrom's arrest "appears to have been an object[ively] reasonable arrest." Thereafter, Nordstrom filed this interlocutory appeal.

## II. STANDARD OF REVIEW

We review the trial court's decision on a motion to dismiss charges and a motion to quash an information for an abuse of discretion. *People v Zitka*, 325 Mich App 38, 43; 922 NW2d 696 (2018); *People v Scott*, 324 Mich App 459, 462; 924 NW2d 252 (2018). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *People v Rogers*, 338 Mich App 312, 320; 979 NW2d 747 (2021). A trial court necessarily abuses its discretion when it makes an error of law. *Id*. We review de novo questions of law. *People v Norwood*, 303 Mich App 466, 469; 843 NW2d 775 (2013).

## III. ANALYSIS

"The purpose of a preliminary examination is to determine whether a crime was committed and whether there is probable cause to believe that the defendant committed it." *People v Rogers*, 338 Mich App 312, 330-331; 979 NW2d 747 (2021) (quotation marks and citation omitted). The prosecution must present evidence of every element of the charged offenses, "or enough evidence from which an element may be inferred." *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018). "Probable cause requires enough evidence to cause a person of ordinary caution and prudence to conscientiously entertain a reasonable belief of the defendant's guilt." *People v Crumbley*, 346 Mich App 144, 167; 11 NW3d 576 (2023) (quotation marks and citations omitted).

To convict a person of resisting or obstructing a police officer in violation of MCL 750.81d(1), the prosecution must establish:

> (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties. [*People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotation marks and citation omitted).]

The prosecution must also establish, as a third element of resisting or obstructing a police officer, that the police officer's actions were lawful. *Id*. at 492.

A person is entitled to resist an unlawful arrest. *Moreno*, 491 Mich at 58. "Whether an arrest is lawful necessarily implicates a defendant's Fourth Amendment right to be free from unreasonable searches and seizures." *People v Murawski*, 349 Mich App 296, 305; 27 NW3d 673 (2023). Because an arrest is a seizure of a person, it must be reasonable under the circumstances. *Dist of Columbia v Wesby*, 583 US 48, 56; 138 S Ct 577; 199 L Ed 2d 453 (2018). An investigative stop, or detainment, under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), is also a seizure of a person, *People v Lucynski*, 509 Mich 618, 637; 983 NW2d 827 (2022), and must be

reasonable in scope, duration, and intensity, *Johnson v VanderKooi*, 509 Mich 524, 539; 983 NW2d 779 (2022). "The scope of the detention must be carefully tailored to its underlying justification." *Florida v Royer*, 460 US 491, 500; 103 S Ct 1319; 75 L Ed 2d 229 (1983). An investigative stop that exceeds the bounds of reasonableness may become a de facto arrest. *United States v Sharpe*, 470 US 675, 685; 105 S Ct 1568; 84 L Ed 2d 605 (1985).

Under MCL 764.15(1)(a), a police officer may conduct a warrantless arrest for a misdemeanor if the misdemeanor was committed in the officer's presence. See also *People v Trapp*, 335 Mich App 141, 153-154; 966 NW2d 420 (2020). Under MCL 764.15(1)(d), an officer may conduct a warrantless arrest for a felony or for "a misdemeanor punishable by imprisonment for more than 92 days" if the officer has "reasonable cause to believe the person committed it." See also *Trapp*, 335 Mich App at 154. Because Nordstrom's conduct that prompted the officers to respond to the apartment complex did not occur in the officers' presence, they could lawfully arrest him for the conduct only if it constituted a felony or a misdemeanor punishable by imprisonment for more than 92 days.

The officers arrested Nordstrom, and he was charged with disturbing the peace. Under MCL 750.170 and MCL 750.504, disturbing the peace is a misdemeanor "punishable by imprisonment for not more than 90 days." Therefore, the officers could not lawfully arrest Nordstrom for the conduct. As noted by the prosecution, "[b]ecause probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Dist of Columbia v Wesby*, 583 US 48, 54 n 2; 138 S Ct 577; 199 L Ed 2d 453 (2018). Sergeant King testified that Nordstrom was taken into custody for disturbing the peace and "disorderly." Under MCL 750.168, "a person convicted of being a disorderly person is guilty of a misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $500.00, or both." Accordingly, neither offense that the officers cited at Nordstrom's preliminary examination was punishable by imprisonment for more than 90 days.

The prosecution asserts that the officers detained, rather than arrested, Nordstrom while they conducted their investigation. It maintains that the officers could lawfully handcuff Nordstrom and place him in the patrol vehicle while merely detaining him and that Nordstrom was not arrested until he fought the officers' attempts to place him in Sergeant King's patrol vehicle. We disagree with the notion that Nordstrom was not under arrest when he was handcuffed and forced to accompany the officers to Sergeant King's vehicle. In *Trapp*, 335 Mich App at 163, this Court recognized that a police officer's questioning of the defendant and physically moving him away from the front door of a residence to a nearby parking area "went far beyond *Terry* and into the realm of an arrest." In the instant case, Nordstrom was lying on the ground and not engaging in disruptive behavior when the officers approached him. He responded to Officer Krzyzak's questions with questions of his own but ultimately identified himself. Although the waistband of his pants was visible because he was shirtless, and the complaint involving Nordstrom did not involve his use of a weapon, the officers handcuffed him before standing him up. The officers then walked him, despite his protestations, to Sergeant King's vehicle intending to place him inside the vehicle. As in *Trapp*, the officers' conduct went far beyond the permissible limits of a *Terry* stop, particularly considering that Nordstrom could not lawfully be arrested for the complained-of

conduct.[2] We reiterate that "[t]he scope of the detention must be carefully tailored to its underlying justification." *Royer*, 460 US at 500.

Like the instant case, the defendant in *Trapp* "was not subject to arrest for anything he had done before the police arrived" because he was suspected of a misdemeanor punishable by imprisonment for not more than 90 days. *Trapp*, 335 Mich App at 153-154. In that case, this Court focused on whether the defendant's detention was reasonable rather than whether it amounted to an arrest, stating as follows:

> [F]or the purpose of ascertaining whether Trapp was entitled to resist the officers, what matters is whether the detention was unreasonable, and not whether, post-*Terry*, we deem it an "arrest."

> The backdrop for our discussion is the "well-established" common-law right to resist not only an unlawful arrest, but "other *unlawful* invasions of private rights." *Moreno*, 491 Mich at 46-47. Michigan's recognition of this right traces back to 1888, when the Supreme Court described that "a debtor" whose "only team, wagon, and harness, worth less than $250" had been unjustly seized by the sheriff was not "compelled to submit to such trespass without reasonable resistance." *People v Clements*, 68 Mich 655, 658; 36 NW 792 (1888). Without that protection, the Court admonished, "every poor debtor would be at the mercy of the sheriff and constabulary of the county, and the statutory benefits intended by the exemption would be of little avail. No officer can be legally authorized to invade private rights in any such manner." *Id*.

> In addition to the right to resist the illegal seizure of property, the common law explicitly recognized the right to resist an unlawful arrest. See *People v Krum*, 374 Mich 356, 361; 132 NW2d 69 (1965) ("While one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest, the basis for such preventive or resistive action is the illegality of an officer's action, to which defendant immediately reacts.") (citations omitted) . . . . In *Moreno*, the Supreme Court acknowledged this strand of the common law and held that courts must apply it. *Moreno*, 491 Mich at 58.

> \* \* \*

> *Terry* stops were unknown to the common law, of course. As *Moreno* instructs, the common law focused on "invasions of privacy" rather than technical distinctions between arrests and other forms of seizure. *Id*. at 46-47. As the above-quoted caselaw demonstrates, the common-law right to resist the unlawful taking of one's *property* also encompasses the right to resist the unlawful taking of one's *liberty*. That is why we need not embark on a protracted analysis of whether Trapp

---

[2] Notably, the police report indicates that the officers informed Nordstrom before escorting him to the patrol car that he was being arrested "for disorderly/disturbing the peace."

was arrested or merely "seized" under *Terry*. The point is that the seizure, whatever its label, was unreasonable. [*Id*. at 163-165 (brackets omitted).]

Likewise, in the instant case, Nordstrom's seizure was unreasonable regardless of whether it is deemed an arrest or a detainment. Accordingly, Nordstrom had a right to resist the officers' actions. See *id*. at 167. Because Nordstrom was entitled to resist, the district court erred by binding him over on the charge of resisting or obstructing a police officer (count 3), and the circuit court erred by denying his motion to quash the charge. See *Murawski*, 349 Mich App at 314-316. However, Nordstrom has failed to demonstrate that he is entitled to dismissal of the charges stemming from his conduct that occurred after he was placed in the holding cell, including his assault of an emergency medical service technician while he was being transported from the cell to the hospital for medical attention. Nordstrom's briefing on this point is sparse and conclusory. He seemingly maintains that all of those other charges must necessarily be dismissed because he was entitled to resist his initial arrest, but he has failed to provide this Court with any meaningful argument or legal authority in support of that apparent position. Accordingly, Nordstrom has abandoned any claim in this appeal that he is entitled to the dismissal of counts 1, 2 and 4. See *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013) ("As we have repeatedly stated, an appellant may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted).[3]

Reversed in part and remanded for further proceedings. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

---

[3] Likewise, because Nordstrom fails to assert any argument regarding his misdemeanor charge of disturbing the peace, we express no opinion regarding that charge (count 5).