*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
June 23, 2022

v

BRIAN MICHAEL DEHART,

        Defendant-Appellant.

No. 353422
Wayne Circuit Court
LC No. 18-006637-01-FC

Before: RICK, P.J., and RONAYNE KRAUSE and LETICA, JJ.

PER CURIAM.

Defendant appeals as on leave granted the trial court's order denying his motion for destruction of his biometric data and arrest record. On appeal, defendant argues that MCL 28.243(14)(c) is unconstitutional because it violates a defendant's right to equal protection, treating those acquitted of sex offenses disparately from those acquitted of other offenses without a rational basis for doing so, and violates an acquitted defendant's right to the presumption of innocence. Defendant further argues that an acquitted defendant has a common-law right to the return of biometric data and arrest records that the Legislature did not clearly abrogate by enacting MCL 28.423(14). We affirm.

## I. PROCEDURAL HISTORY

Defendant was charged with first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b) (victim between 13 and 15 years old and related by blood), and arraigned. After two subsequent jury trials ended in hung juries and mistrials, a third jury found defendant not guilty and the trial court entered an order of acquittal.[1]

---

[1] The court's order directed the arresting agency to "destroy the fingerprints and arrest card according to law," explaining to defendant that those items would be destroyed when "permitted by MCL 28.243." SCAO, *Form MC 262* (March 2014). As of December 31, 2019, however, an updated form was to be used.

Four days later, defendant filed a form motion requesting destruction of his biometric data and arrest record. SCAO, *Form MC 235* (June 2019). Defendant asserted that after he was found not guilty of CSC-I, the arresting agency or Michigan State Police "ha[d] not destroyed the biometric data and arrest record as required by law," even though "one of the crimes listed in MCL 28.243(14)" was not involved. The prosecution denied that defendant was entitled to the destruction of his biometric data and arrest record because his acquittal did indeed pertain to crimes listed in MCL 28.243(14), namely, the commission of a crime against a child under 16 years of age, MCL 28.243(14)(a), and criminal sexual conduct (CSC) in any degree, MCL 28.243(14)(c).

At the hearing on the motion, defendant recognized that the plain statutory language precluded the destruction of his biometric data and arrest record. Nevertheless, defendant maintained that the allegation against him was false and he orally argued that MCL 28.243(14) violated his constitutional right to equal protection. Defendant also argued that he was "innocent until proven guilty," and, despite the jury's not guilty finding, the statute treated him differently than other defendants found not guilty on the basis of the nature of the allegation against him. In response, the prosecutor disagreed with defendant's characterization of the allegation against him as false: "I also don't think it's fair to refer to them as false allegations. He was found not guilty. That doesn't mean anything."[2] The prosecutor further asserted the statutory language was clear and defendant was not entitled to the destruction of his biometric data and arrest record. The trial court agreed with the prosecution, but did not specifically address defendant's constitutional arguments.

Defendant moved for reconsideration, asserting that "[t]he jury and many of the panel members of the mistrial juries believed the charges may have been fabricated." Defendant again argued that MCL 28.243[3] disparately treated individuals who were acquitted of a CSC offense compared to all other offenses. Defendant also raised a new argument—the trial court possessed "common law powers to grant the relief sought[.]" More specifically, defendant asserted that in addition to its statutory authority to return the fingerprints, the court had ancillary jurisdiction to order their return as well as the equitable power to order return of the biometric data and arrest record. The trial court denied defendant's motion for reconsideration.

Defendant then filed an application for delayed leave to appeal with this Court, which we denied for lack of merit in the grounds presented. *People v DeHart*, unpublished order of the Court of Appeals, entered May 28, 2020 (Docket No. 353422). Defendant appealed to the Supreme

---

[2] The prosecutor's characterization is overstated. See e.g., *People v Ewing*, 435 Mich 443, 451-452; 458 NW2d 880 (1990) (BRICKLEY, J.) (a jury's not guilty verdict may reflect its determination that the prosecution failed in its high burden of proof beyond a reasonable doubt, that it exercised lenity, or even that there were reasons unrelated to the defendant's factual guilt or innocence, including misunderstanding the court's instructions).

[3] Defendant's motion for reconsideration cites to MCL 28.245, but it is clear the correct citation is to MCL 28.243. Defendant continues to rely on MCL 28.245 on appeal and we will continue to treat his citation as referring to MCL 28.243.

Court, which, in lieu of granting leave to appeal, remanded the matter to this Court to consider as on leave granted. *People v DeHart*, 506 Mich 964 (2020).[4]

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Constitutional issues and questions of statutory interpretation are reviewed de novo. *People v Idziak*, 484 Mich 549, 554; 773 NW2d 616 (2009).

In Michigan, when a person is arrested for a felony, his biometric data must be collected by the arresting law enforcement agency and forwarded to the state police. MCL 28.243(1). Biometric data includes fingerprint and palm print[5] images, digital images of a person's face and body[6] during arrest or booking, and "[a]ll descriptive data associated with identifying marks, scars, amputations, and tattoos." MCL 28.241a(b)(*i*)-(*iv*). If the arrestee is released without being charged with an offense, the biometric data and arrest card[7] must be destroyed. MCL 28.243(7).[8] But if the arrestee *is* charged and the charge or charges are dismissed before trial:

> (a) The arrest record shall be removed from the internet criminal history access tool (ICHAT).[9]

---

[4] "On order of the Court, the application for leave to appeal the May 28, 2020 order of the Court of Appeals is considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration as on leave granted. See *People v Moreno*, 491 Mich 38, 46; 814 NW2d 624 (2012) ('While the Legislature has the authority to modify the common law, it must do so by speaking in no uncertain terms.') (quotation marks and citations omitted)."

[5] "[I]f the arresting law enforcement agency has the electronic capability to record palm print images in a manner prescribed by the department." MCL 28.241a(b)(*ii*).

[6] "[I]f the arresting law enforcement agency has the electronic capability to record the images in a manner prescribed by the department." MCL 28.241a(b)(*iii*).

[7] An "arrest card" is defined as "a paper form or an electronic format prescribed by the department that facilitates the collection and compilation of criminal and juvenile arrest history record information and biometric data." MCL 28.241a(a).

[8] Before 2001, the statutory language provided for the return of the collected items. Compare MCL 28.243(6), as amended by 1999 PA 266 ("If . . . an accused is found not guilty of the offense, the arrest card, the fingerprints, and description shall be returned to him or her . . . .") with MCL 28.243(8), as amended by 2001 PA 187 ("If . . . an accused is found not guilty of the offense, the fingerprints and the arrest card shall be destroyed . . . .") and MCL 28.243(8), as amended by 2012 PA 374 (adding that any biometric data be destroyed). We will use the current statutory language, namely destruction, unless quoting from an opinion that used the pre-amendment language of return.

[9] ICHAT provides access to "criminal history records of individuals who have been convicted of a crime in Michigan, as well as for individuals who have pending criminal cases."

(b) If the prosecutor of the case agrees at any time after the case is dismissed, or if the prosecutor of the case or the judge of the court in which the case was filed does not object within 60 days from the date an order of dismissal was entered for cases in which the order of dismissal is entered after [June 12, 2018], both of the following apply:

(*i*) The arrest record, all biometric data, and fingerprints shall be expunged or destroyed, or both, as appropriate.

(*ii*) Any entry concerning the charge shall be removed from the LEIN [Law Enforcement Information Network].[10] [MCL 28.243(8)(a)-(b).]

See also MCL 764.26a. Finally, if the arrestee is found not guilty following a trial, his or her biometric data and arrest card must be destroyed, MCL 28.243(10), unless an exception under MCL 28.243(14) applies. In full, MCL 28.243(14) reads:

Except as provided in [MCL 28.243(8)], the provisions of [MCL 28.243(10)] that require the destruction of the biometric data and the arrest card do not apply to a person who was arraigned for any of the following:

(a) The commission or attempted commission of a crime with or against a child under 16 years of age.

(b) Rape.

(c) Criminal sexual conduct in any degree.

(d) Sodomy.

(e) Gross indecency.

(f) Indecent liberties.

(g) Child abusive commercial activities.

(h) A person who has a prior conviction, other than a misdemeanor traffic offense, unless a judge of a court of record, except the probate court, by express order on the record, orders the destruction or return of biometric data and arrest card.

---

<https://www.michigan.gov/documents/BACKGROUND_CHECKS_96361_7.pdf> (accessed June 14, 2022). To conduct a search, a user must provide "the subjects full name (including aliases and/or maiden names), sex, race, and date of birth." *Id*. Unless exempt, the user must pay a ten-dollar fee to obtain information. See MCL 28.273(2).

[10] LEIN is "the communication network that collects and disseminates [criminal justice information, including biometric data] to authorized Michigan [criminal justice information system] user agencies . . . ." Mich Admin Code R 28.5101(g), (n), and (t).

(i) A person arrested who is a juvenile charged with an offense that would constitute the commission or attempted commission of any of the crimes in this subsection if committed by an adult.

This "statute is presumed constitutional, and the party challenging it bears a heavy burden of rebutting that presumption." *Idziak*, 484 Mich at 570 (quotation marks and citation omitted). The federal and state Constitutions guarantee every person equal protection under the law. US Const, Am XIV; Const 1963, art 1, § 2; *People v Konopka (On Remand)*, 309 Mich App 345, 367; 869 NW2d 651 (2015). "The equal protection clauses of the United States and Michigan Constitutions are coextensive." *Idziak*, 484 Mich at 570. "In a challenge brought under the Equal Protection Clause, a defendant must show that he . . . was treated differently than other persons who were similarly situated and that there exists no rational basis for such disparate treatment." *Konopka*, 309 Mich App at 367 (citations omitted). In the absence of a "fundamental" right or a "suspect" classification, "[t]he burden is on the person challenging the classification to show that it is without reasonable justification." *People v Perlos*, 436 Mich 305, 331; 462 NW2d 310 (1990) (quotation omitted).

> To prevail under this highly deferential standard of review, a challenger must show that the legislation is arbitrary and wholly unrelated in a rational way to the objective of the statute. Rational-basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with mathematical nicety, or even whether it results in some inequity when put into practice. [*Idziak*, 484 Mich at 570-571 (quotation marks and citations omitted).]

Applying the plain language of MCL 28.243(14)(a) and (c), defendant is not entitled to the destruction of his biometric data and arrest record because the offense he was charged with committing, arraigned upon, and later acquitted of, was a crime against a child under 16 years of age as well as a CSC in any degree. When, however, a statute is inconsistent with the federal constitution, the constitution must prevail. *Mays v Governor*, 506 Mich 157, 189; 954 NW2d 139 (2020). Thus, if, as defendant claims, the statute precluding the destruction of the biometric data and arrest record for those charged with and acquitted of certain offenses violates the Equal Protection Clause or the presumption of innocence, it must be struck down.

Twenty-five years ago, this Court addressed these same questions in *People v Cooper (After Remand)*, 220 Mich App 368; 559 NW2d 90 (1996). This Court first analyzed whether MCL 28.243 "violates the Equal Protection Clauses of the United States Constitution and the Michigan Constitution by precluding a person who is acquitted of criminal sexual conduct charges from obtaining the return of the person's fingerprint cards, arrest card, and description from the state police and the arresting police agency."[11] *Cooper*, 220 Mich App at 369. The defendant

---

[11] *Cooper* involved a prior version of MCL 28.243. See footnote 8. The exceptions now located in subsection (14) were in subsection (9), which read:

> The provisions of this section requiring the return of the fingerprints, arrest card, and description shall not apply in the following cases:

argued that there was no rational basis for refusing to return the fingerprint cards and arrest records of those "acquitted of criminal sexual conduct charges while permitting the return of those documents to those acquitted of other serious crimes such as murder, armed robbery, or a controlled substance offense." *Id*. at 373. This Court disagreed, reasoning:

> Criminal sexual conduct offenses—committed against children as well as adults—are particularly difficult to detect, investigate, and prosecute. Historically, such offenses have been underreported because of various lamentable factors, including, but not limited to, the victim being related to the offender, the victim's age, or the victim's feelings of fear, embarrassment, or shame. Once reported, criminal sexual conduct offenses are more difficult to prosecute than other serious crimes because they are generally committed under a shroud of secrecy, leaving the victim as the only significant witness to the offense. Moreover, empirical evidence indicates that sex offenders are generally recidivists. Because of these unique characteristics, the state has a legitimate interest in implementing a criminal identification and record system to facilitate law enforcement investigation and prosecution of criminal sexual conduct offenses.

> We also note that, under certain circumstances, evidence of prior sexual assaults that have resulted in acquittal may be admissible as prior bad acts evidence in subsequent sexual assault prosecutions under MRE 404(b). This is another fact that justifies the refusal to return arrest records to persons acquitted of sex crimes. [*Cooper*, 220 Mich App at 374-375 (citations and footnote omitted).]

*Cooper* further addressed whether the defendant's claim that his right to be presumed innocent until proved guilty was infringed by "the state maintain[ing] his fingerprint and arrest cards in a criminal identification system." *Id*. at 375. This Court rejected that claim, ruling "[f]ingerprints are a matter of identification, not incrimination." *Id*.

Under MCR 7.215(J)(1), "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." MCR 7.215(J)(1). Accordingly, "there has been a judicial practice of, and there is authority to support, a panel of this Court finding that a binding opinion of another panel of this Court has been implicitly overruled by a subsequent Supreme Court decision." *Marchyok v Ann Arbor*, 260 Mich App 684, 689 n 1; 679 NW2d 703 (2004);

---

(a) The person arrested was charged with the commission or attempted commission . . . of a crime with or against a child under 16 years of age or the crime of criminal sexual conduct in any degree . . . . [MCL 28.243(9), as amended by 1989 PA 97. See also *Cooper*, 220 Mich App at 371-372, quoting MCL 28.243(5) and (9).]

*People v Alexander (After Remand)*, 207 Mich App 227, 230 n 1; 523 NW2d 653 (1994). In the absence of such an exception, we are bound to follow *Cooper*.

## III. CONSTITUTIONALITY OF MCL 28.243(14)

Defendant contends that MCL 28.243(14) is unconstitutional because it violates equal protection by treating him differently than those charged with and acquitted of other offenses not of a sexual nature[12] without a rational basis for such disparate treatment.[13] Defendant also argues our Supreme Court's recent decision in *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019), suggests that this statutory exception violates the presumption of innocence. For these reasons, defendant urges us to determine that *Cooper* has been implicitly overruled, and, even if we do not, he asks us to "certify the issue to a super-panel of this Court"[14] because *Cooper*'s underlying rationale is no longer persuasive.

In *Cooper*, this Court squarely addressed the destruction of biometric data and arrest cards under MCL 28.243(10), particularly whether law enforcement may retain the arrest and identification records for a person tried for and acquitted of criminal sexual conduct offenses.

---

[12] Curiously, defendant's argument only addresses the constitutionality of the exclusion from destruction for those arraigned for CSC, presumably referring either to MCL 28.243(14)(b) ("[r]ape") or (c) ("[c]riminal sexual conduct in any degree"). However, MCL 28.243(14)(a) addresses "[t]he commission . . . of a crime with or against a child under 16 years of age" and is not restricted to CSC offenses. As noted, defendant was charged with CSC-I under MCL 750.520b(1)(b), an element of which is that the victim was younger than 16 years of age. Therefore, MCL 28.243(14)(a) would independently preclude relief, irrespective of the CSC nature of defendant's charge. Nevertheless, we will address defendant's challenges to the subsection related to CSC charges.

[13] Defendant does not purport to suggest he is a member of a suspect class. See *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 469; 639 NW2d 332 (2001) (listing "race, alienage, ethnicity, and national origin," and, to a lesser extent, "gender and mental capacity" as suspect classifications). Defendant does suggest, albeit not clearly, that certain fundamental rights might be implicated, but it is not obvious to us how the classification at issue in this matter affects the right to vote, the right of association, the right of access to the courts, or any established constitutional right to privacy or due process. See, e.g., *Houchins v KQED, Inc*, 438 US 1, 5 n 2; 98 S Ct 2588; 57 L Ed 2d 551 (1978) (inmates retain a privacy right against being treated "like animals in a zoo to be filmed and photographed at will"); *Village of Belle Terre v Boraas*, 416 US 1, 7-8; 94 S Ct 1536; 39 L Ed 2d 797 (1974) (voting, right of association, right of access to the courts, rights of privacy); *Griswold v Connecticut*, 381 US 479, 482-486; 85 S Ct 1678; 14 L Ed 2d 510 (1965) (rights to privacy and association include political, social, educational, legal, economic, and reproductive freedoms).

[14] The proper procedure is to request this Court to issue an opinion that follows *Cooper* because we are required to do so under MCR 7.215(J)(1), and explain why we disagree with it. MCR 7.215(J)(2). Doing so initiates the procedures in MCR 7.215(J)(3) through (4) to convene a conflict panel.

Defendant nevertheless argues that advances in knowledge since the time when *Cooper* was decided undermine *Cooper*'s continued validity. For example, citing to multiple journal articles, defendant contends it is now known that sex offenders do not have a high rate of recidivism. See generally *People v Betts*, 507 Mich 527, 559 n 19 and 20; 968 NW2d 497 (2021). Defendant further argues that *Cooper* failed to consider the high rate of false CSC accusations, particularly during ongoing divorce and custody disputes.[15] Both of defendant's assertions raise plausible points, but they are directed to the wrong governmental body as they exemplify policy considerations "properly left for the people's elected representatives in the Legislature, not the judiciary." *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 589; 702 NW2d 539 (2005). This Court is simply not equipped to resolve disputes among academics regarding recidivism and false reporting rates. "The courts are not in the business of resolving scientific disputes." *Chapin v A & L Parts, Inc*, 274 Mich App 122, 139; 732 NW2d 578 (2007) (DAVIS, J.). By contrast, the Legislature may hold hearings and receive testimony from as many experts as it chooses and carefully craft a law on the basis of opinions it finds credible. See *id*. ("The Legislature, unlike the judiciary, is institutionally equipped to assess the numerous trade-offs associated with a particular policy choice."). Indeed, this is precisely why, when conducting a rational-basis review, this Court "does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with mathematical nicety, or even whether it results in some inequity when put into practice." *Idziak*, 484 Mich at 571 (quotation marks and citation omitted).

We note[16] that the current version of MCL 28.243 does reflect a modern development that did not exist in 1996 when *Cooper* was decided: the existence of a publicly accessible and searchable online database such as ICHAT. Insofar as we can determine, ICHAT was not created until after *Cooper* was decided. Pursuant to MCL 28.243(8)(a) and the identical MCL 762.26a(1)(a), removal of a person's arrest record from ICHAT is only specified if any

---

[15] See e.g., *People v Mullins*, 322 Mich App 151; 911 NW2d 201 (2017) (affirming the defendant's convictions for contributing to the delinquency of a minor and making a false report of felony child abuse when her young daughter falsely reported to her teacher that her father had sexually touched her at the defendant's urging during the parties' custody litigation.).

Although defendant has provided us a limited record on appeal (we have no trial or preliminary examination transcripts), it appears there is no dispute that defendant's daughter reported he had sexually assaulted her years earlier and after defendant had filed for divorce. The current record does not reflect that defendant's daughter repudiated her disclosure. Cf. *McCarthy v Scofield*, 486 Mich 939-940; 782 NW2d 504 (2010) (MARKMAN, J, concurring) (Four Justices concurred in the denial of leave regarding the civil plaintiff's request to order destruction of his fingerprints and arrest records, but urged the Legislature to review MCL 28.243, which did not allow the civil plaintiff to have these items destroyed, even though the victim, his minor child "admitted fabricating the charge . . .," resulting in the prosecution dismissing it before trial.).

[16] See *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47 (2002) ("addressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle," and "the parties' failure or refusal to offer correct solutions to" an issue does not limit an appellate court's "ability to probe for and provide the correct solution").

charges are dismissed before trial, irrespective of the nature of those charges. Nothing in MCL 28.243(10) calls for removal of information from ICHAT. Although MCL 28.243(14) does make a reference to subsection (8), the exceptions for enumerated offenses only apply to subsection (10). We note that MCL 28.242a(1) requires dissemination of "All criminal history record information that is associated with a state identification number and is supported by biometric data," and logically, destruction of biometric data and arrest records would leave nothing behind to be displayed in ICHAT. Nevertheless, we believe the implications of ICHAT demand more careful scrutiny than is possible at this time, given the lack of briefing on the matter, so we merely note the potential concern and leave resolution of this matter for the future.

Defendant next challenges *Cooper*'s recognition of the value to law enforcement in retaining the arrest records of one acquitted of a CSC offense for potential use as other-acts evidence in a future CSC case. *Cooper*, 220 Mich App at 375. The *Cooper* majority cited to *People v Gibson*, 219 Mich App 530, 531-534; 557 NW2d 141 (1996), to support this rationale. In turn, *Gibson* quoted from *People v Oliphant*, 399 Mich 472, 488; 250 NW2d 443 (1976), explaining that "in a sexual assault prosecution, evidence of prior acts is admissible under MRE 404(b) if it 'tends to show a plan or scheme to orchestrate events surrounding the [sexual assault] so that [the complainant] could not show nonconsent.' "[17] *Gibson*, 219 Mich App at 533, quoting *Oliphant*, 399 Mich at 488. The Legislature's determination that CSC offenses are unique in this way is a rational basis for retaining an earlier CSC arrest record despite a subsequent acquittal.[18] As recognized in *Cooper*, such a provision "dovetails with [MCL 28.247[19]], which

---

[17] Numerous cases have upheld the admission of such other-acts evidence in sexual-assault cases. See *People v Bolden*, 98 Mich App 452, 458-462; 296 NW2d 613 (1980); *People v Lemoine*, unpublished per curiam opinion of the Court of Appeals, issued July 17, 2018 (Docket No. 336691), slip op at 2-5; *People v Marble*, unpublished per curiam opinion of the Court of Appeals, issued September 15, 2016 (Docket No. 327630), slip op at 2-5; *People v Nowack*, unpublished per curiam opinion of the Court of Appeals, issued September 25, 2012 (Docket No. 305738), slip op at 2-4; *People v Wilson*, unpublished per curiam opinion of the Court of Appeals, issued December 15, 2011 (Docket No. 296307), slip op 1-3; *People v Rowe*, unpublished per curiam opinion of the Court of Appeals, issued June 17, 2008 (Docket No. 276504), slip op 1-3; *People v Mills*, unpublished per curiam opinion of the Court of Appeals, issued June 24, 2004 (Docket No. 247948), slip op at 1-4; *People v Wellborn*, unpublished opinion per curiam of the Court of Appeals, issued December 16, 2003 (Docket No. 242229), slip op 1-2; *People v Almond*, unpublished per curiam opinion of the Court of Appeals, issued June 18, 2002 (Docket No. 228027), slip op at 1-2. Although unpublished cases are not binding, we find some persuasive value here in the sheer number of such cases. See *Miclea v Cherokee Ins Co*, 333 Mich App 661, 670; 963 NW2d 665 (2020).

[18] If an arrest warrant was issued, a probable cause determination would have been made, MCL 764.1a, and, if there was a warrantless arrest, a probable cause determination would also be required. MCL 764.1c.

[19] MCL 28.247 provides:

require[s] law enforcement officials to make reports regarding persons accused of 'sexually motivated crimes' (including the ultimate disposition of those cases) and to file [those] reports with the Department of State Police," which shall maintain them " 'in a separate confidential filing system.' " *Cooper*, 220 Mich App at 374 n 2, quoting MCL 28.247.

Notably, defendant does not challenge *Cooper*'s determination that the state has a legitimate interest in facilitating the investigation and prosecution of CSC offenses through the implementation of a criminal identification and record system because sex offenses are difficult to detect, investigate, and prosecute, and the victim is often the only witness.[20] *Cooper*, 200 Mich App at 374. These justifications alone support *Cooper*'s conclusion that MCL 28.243(14)(c) does not violate defendant's right to equal protection.

Turning to defendant's contention that MCL 28.243(14)(c) infringes on his presumption of innocence, *Cooper* rejected this claim because "[f]ingerprints are a matter of identification, not incrimination."[21] *Cooper*, 220 Mich App at 375. Furthermore, even if defendant's fingerprints

---

The sheriff of every county and the chief executive officer of the police department of every city, village, and township shall make reports of accused persons against whom a warrant has been issued and the disposition thereof in sexually motivated crimes and juvenile offenses and crimes and juvenile offenses involving sexual conduct verified as such and the disposition of cases resulting from such charges. The department of state police shall provide the forms necessary for reporting such information, and the department shall file the reports or copies of the reports in a separate confidential filing system. The reports shall be available for examination only by the attorney general, any prosecuting attorney, any court of record, the director of the state police, county sheriffs, and the chief executive officer of the police department of any city, village, or township and their authorized officers. The reports shall be held confidential except for official use. Any person who violates any of the confidential provisions of this section shall be guilty of a misdemeanor, punishable by imprisonment for not more than 1 year, or by a fine of not more than $500.00, or both.

[20] Sweeny, *The #MeToo Movement in Comparative Perspective*, 29 Am U J Gender Soc Pol'y & L (2020) (footnotes omitted) ("[A]t less than 30% reporting rate, sexual assault is the most underreported violent crime in the United States . . . . [And] a very small percentage of th[ose reports] result in arrest (4.6%), prosecution (0.9%), felony conviction (0.5%) or incarceration (0.46%)"; Avalos, *Reversing the Decriminalization of Sexual Violence*, 21 Nev LJ 1 (2020); Lehner, *Rape Process Templates: A Hidden Cause of the Underreporting of Rape*, 29 Yale JL & Feminism 1 (2017); Daly & Bouhours, *Rape and Attrition in the Legal Process: A Comparative Analysis of Five Countries*, 39 Crime and Just 565 (2010).

[21] "[F]ingerprinting . . . [is] a natural part of 'the administrative steps incident to arrest.' " *Maryland v King*, 569 US 435, 458; 133 S Ct 1958; 186 L Ed 2d 1 (2013), quoting *Co of Riverside v McLaughlin*, 500 US 44, 58; 111 S Ct 1661; 114 L Ed 2d 49 (1991). "[R]outine fingerprinting [does] not violate the Fourth Amendment precisely because it fit[s] within the accepted means of processing an arrestee into custody . . . ." *Id.* Fingerprinting is " 'no more than an extension of

and arrest record might conceivably make it somewhat easier for law enforcement to search for potential other-acts evidence, the admission of other-acts evidence has been held not to undermine the presumption of innocence. See *People v Bradford*, 69 Mich App 583, 587; 245 NW2d 137 (1976); *People v Schultz*, 278 Mich App 776, 778-779; 754 NW2d 925 (2008). But, in light of our Supreme Court's subsequent decision in *Beck*, defendant asserts that an acquittal must be treated as more than a determination that the prosecution failed in its burden of proof, rendering MCL 28.243(14) unconstitutional. We disagree.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *People v Banks*, 249 Mich App 247, 258; 642 NW2d 351 (2002) (quotation marks and citation omitted). The right to a fair trial applies "[i]n all criminal prosecutions." US Const, Am VI. The United States Supreme Court has held that

> [t]he presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial. . . . But it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun. [*Bell v Wolfish*, 441 US 520, 533; 99 S Ct 1861; 60 L Ed 2d 447 (1979).]

Thus, the presumption of innocence applies to evidentiary and trial issues in criminal cases. *Id*. See also *Taylor v Kentucky*, 436 US 478, 485; 98 S Ct 1930; 56 L Ed 2d 468 (1978) (citations omitted) ("one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial . . . . And it has long been recognized that an instruction on the presumption of innocence is one way of impressing upon the jury the importance of that right.").

Importantly, not all requests for the destruction of an arrestee's biometric data and arrest card involve a criminal prosecution. See MCL 28.243(7) ("[I]f a person is arrested for having

---

methods of identification long used in dealing with persons under arrest' " for alleged violations of the criminal law. *Id*., quoting *United States v Kelly*, 55 F2d 67 (CA 2, 1932). Indeed, "[b]y the middle of the 20th century, it was considered 'elementary that a person in lawful custody may be required to submit to photographing and fingerprinting as part of routine identification processes.' " *Id*. at 59, quoting *Smith v United States*, 324 F2d 879, 882 (CA DC, 1963) (BURGER, J.) (citations omitted). Thus, "there can be little reason to question 'the legitimate interest in the government in knowing for an absolute certainty the identity of the person arrested, in knowing whether he is wanted elsewhere, and in ensuring his identification in the event he flees prosecution.' " *Id*. at 461, quoting 3 W LaFave, Search and Seizure §5.3(c), p 216 (5th ed 2012). Accordingly, "courts have confirmed that the Fourth Amendment allows police to take certain routine administrative steps incident to arrest—*i.e.*, . . . book[ing], photograph[ing], and fingerprint[ing].' " *Id*., quoting *McLaughlin*, 500 US at 58.

committed an offense for which biometric data were collected . . . is released without a charge made against him . . . the official taking or holding the person's biometric data and arrest card shall immediately destroy the biometric data and arrest card."). For the most part, the Legislature placed the relevant statutory provisions in Chapter 28, dealing with the Michigan State Police, and not Chapter 750, dealing with crimes and punishments. But see MCL 750.26a, which mirrors MCL 28.243(8). Consequently, an arrestee seeking an official's compliance with the statute's mandatory destruction directive may file an action for a writ of mandamus, a civil process, rather than a motion for the destruction of biometric data and an arrest record. See e.g., *McElroy v Mich State Police Criminal Justice Info Ctr*, 274 Mich App 32, 35; 731 NW2d 138 (2007). Thus, although arising from a criminal investigation, the retention or destruction of a defendant's biometric data and arrest card may be a civil matter, to which the presumption of innocence does not apply.

In any event, in *Beck*, the Supreme Court addressed "whether a sentencing judge can sentence a defendant for a crime of which the defendant was acquitted." *Beck*, 504 Mich at 608. Pre-*Beck*, if a jury acquitted the defendant of a charged crime under a beyond-a-reasonable-doubt standard but nevertheless convicted the defendant of a lesser or different charge, the sentencing court could consider the acquitted conduct *if* the court determined it was established under a preponderance-of-the-evidence standard. *Id*. at 608. In that case, the jury acquitted Beck of open murder, carrying a firearm with unlawful intent, and felony-firearm charges; however, it convicted him of being a felon-in-possession and felony-firearm, second offense. *Id*. at 610. Although the sentencing guidelines range recommended a minimum sentence of 22 to 76 months for the felon-in-possession conviction, the sentencing court sentenced Beck to 20 to 33 1/3 years' imprisonment, finding by a preponderance of the evidence that he had committed the murder. *Id*. at 610-612. Adopting the minority rule, the *Beck* Court held that the practice of sentencing the defendant as if he had committed the crime despite the jury's acquittal violated due process, "grounding that conclusion in the guarantees of fundamental fairness and the presumption of innocence." *Id*. at 609, 626-627.

Clearly, *Beck* establishes that acquitted conduct is meaningfully distinct in some ways from uncharged conduct. *Beck*, 504 Mich at 620-621, 626-629. And *Beck* essentially held that a sentencing trial judge may not effectively overturn a jury's acquittal when crafting an appropriate sentence. However, *Beck* did not create a categorical rule prohibiting use of acquitted conduct for all purposes. To the contrary, the Court specifically distinguished cases involving the issue of whether a "trial court could admit other-acts evidence in a subsequent prosecution when that other-acts evidence involved conduct of which the defendant had been previously acquitted." *Beck*, 504 Mich at 624 n 17, citing *Dowling v United States*, 493 US 342; 110 S Ct 668; 107 L Ed 2d 708 (1990) (admission at the defendant's bank robbery trial of similar-act evidence that he had subsequently been involved in a home armed robbery, of which he was later acquitted, did not violate double jeopardy or due process); *Oliphant*, 399 Mich at 499-500 (the admission of an earlier CSC, of which the defendant was acquitted, as similar-act evidence did not violate double jeopardy). As already discussed, this is one of the specific rationales identified as a basis for retaining records from a CSC arrest despite a subsequent acquittal. *Cooper*, 220 Mich App at 375.

Additionally, unlike the increased sentence imposed in *Beck* for acquitted conduct, the refusal to return defendant's biometric data and arrest record is not a criminal penalty subject to the presumption of innocence. The acquisition, retention, and dissemination of biometric data

-12-

simply does not presume anyone is guilty of a crime. Instead, it is part of law-enforcement's record-keeping function, accurately reflecting the fact of an arrest *and* an acquittal. This Court has recognized "that people linked with a crime, whether as a perpetrator, witness, or victim, have an interest in not sharing this information with the public." *State News v Michigan State Univ*, 274 Mich App 558, 578; 735 NW2d 649 (2007), rev'd in part on other grounds 481 Mich 692 (2008). However, this Court has also held that disclosure of mugshots[22] under the Freedom of Information Act (FOIA) does not violate an arrestee's constitutional rights. *Detroit Free Press, Inc v Oakland Co Sheriff*, 164 Mich App 656, 663-669; 418 NW2d 124 (1987). We again note that public databases like ICHAT are recent innovations that may warrant special consideration, particularly because it is not inherently unreasonable for defendant to be concerned whether the public would appreciate the distinction between an accusation and a conviction of a criminal sexual conduct offense. However, as discussed, we think that consideration should be reserved for a future case.

Our Legislature specifically tasked the Department of State Police (Department) with the responsibility of creating and maintaining a fingerprint identification and criminal history record division within the Department and directed that it "be supplied with the necessary apparatus and materials for collecting, filing, and preserving criminal . . . records filed with" it. MCL 28.241. As part of this statutory scheme, an arresting law enforcement agency must collect the arrestee's "biometric data and forward" it to the Department "within 72 hours after the arrest." MCL 28.243(1). And, if the court orders the arrestee's fingerprints to be collected under MCL 764.29 or MCL 769.1, "the law enforcement agency shall forward the biometric data and arrest card to the department." MCL 28.243(6). In turn, the Department must "forward the biometric data to the director of the Federal Bureau of Investigation . . . ." *Id*. The Department must also "record the disposition of each charge and . . . inform the director of the Federal Bureau of Investigation of the final disposition of any arrest or offense for which a person's biometric data were collected . . . ." MCL 28.243(12). Thus, both the arrest and disposition are included, and the disposition reflects that the presumption of innocence was not overcome at trial. For these reasons, *Beck* does not control the outcome here.

IV. RIGHT TO RETURN OF FINGERPRINTS

Finally, defendant argues that he is entitled to the return of his fingerprints notwithstanding the language of MCL 28.243(14) for two reasons. First, individuals acquitted of the criminal offense for which they are charged are entitled to the return of their fingerprints under the common law, and, relatedly, the Legislature has not clearly abrogated that right. Second, the trial court has the ancillary authority to order the return of his fingerprints following his acquittal. We disagree.

Initially, we note that "an issue is not properly preserved unless a party raises the issue before the trial court and the trial court addresses and decides the issue." *Cameron*, 291 Mich App at 617. Defendant first raised the issue of whether he is entitled to the return of his fingerprints under the common law in his motion for reconsideration. "Where an issue is first presented in a

---

[22] Mugshots are clearly within the definition of "biometric data" under MCL 28.241a(b)(*iii*).

motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Therefore, this issue is unpreserved.

Questions of law, such as the availability of a common-law right, are reviewed de novo. *People v Dupree*, 486 Mich 693, but unpreserved issues are reviewed for plain error. *People v Borgne*, 483 Mich 178, 184; 768 NW2d 290 (2009). Under a plain-error analysis,

> a defendant is not entitled to relief unless he can establish (1) that the error occurred, (2) that the error was "plain," (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. [*People v Vaughn*, 491 Mich 642, 654; 821 NW2d 288 (2012).]

As our Supreme Court explained in *People v Moreno*, 491 Mich 38, 46; 814 NW2d 624 (2012):

> The common law remains in force unless it is modified.[23] We must presume that the Legislature know[s] of the existence of the common law when it acts. Accordingly, this Court has explained that [t]he abrogative effect of a statutory scheme is a question of legislative intent and that legislative amendment of the common law is not lightly presumed. While the Legislature has the authority to modify the common law, it must do so by speaking in no uncertain terms. Moreover, this Court has held that statutes in derogation of the common law must be strictly construed and shall not be extended by implication to abrogate established rules of common law. [Quotation marks and citations omitted; alterations in original.]

As an initial matter, defendant has not identified any Michigan caselaw that recognizes an acquitted defendant's common-law right to the return of fingerprints. The three out-of-state authorities he relies upon are not binding on us, *People v Woodard*, 321 Mich App 377, 385 n 2; 909 NW2d 299 (2017), and we find them unpersuasive.[24]

The earliest Michigan case addressing the return of an arrest card after dismissal of a criminal charge is *Miller v Gillespie*, 196 Mich 423; 163 NW 22 (1917). Based on the complaining witness' ignorant or malicious complaint that Miller had embezzled or converted an article of

---

[23] Const 1963, art 3, § 7 provides that "[t]he common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed."

[24] *Martinez v Missouri*, 24 SW3d 10 (Mo App, 2000) (interpreting a state statute permitting expungement of arrest records); *St. Paul v Froysland*, 310 Minn 268; 246 NW2d 435 (1976) (interpreting a state statute providing for return of identification data upon a determination in favor of the arrestee); *Eddy v Moore*, 5 Wash App 334; 487 P2d 211 (1971) (determining there was a federally-recognized constitutional right to privacy that required the state to return fingerprints and photographs of an acquitted arrestee absent a compelling showing of necessity to retain them.).

personal property, an arrest warrant was issued. After Miller's arrest, an officer prepared a memorandum regarding the matter as he was required to do by a city ordinance. The memorandum contained basic information, including Miller's name, address, descriptive information, the nature of the charge, and the officers' names. At a later jury trial, testimony was taken and the court dismissed the charge. According to the Supreme Court "[i]t seems to be clear that [Miller] has committed no offense and that the trial ought to have been concluded with a verdict of acquittal." Miller, a business and family man with an unblemished record, sued to obtain a decree requiring the police commissioner and others to turn over all items referencing him to the court for destruction. The trial court dismissed Miller's suit and he appealed.

The Supreme Court affirmed. *Id*. at 428. Initially, it recognized there were at least two "fairly obvious" purposes served in making and preserving the police department's record: (1) "The responsible superior police officials are thereby furnished with definite and authoritative data of the activities of the department" and (2) "[P]reservation [of the memorandum], for future reference and use[.]" *Id*. at 425-426. Miller had not complained that the record was false or that any privacy or property right was violated by the arrest report required by city ordinance to include the arrestee's name, the name of the offense, the place of arrest, and the place of detention. *Id*. at 426. Nor did Miller contend that the department's retention of the memorandum was libelous. *Id*. Instead, Miller contended that he was "innocent and a good citizen," and preserving the report where future use could be made of it and it could be published, intentionally or inadvertently, "in a group of records of criminals," was a wrong "for which a court of equity should afford a remedy." *Id*. The Court disagreed, explaining that "mere preservation in the files of the police department of a [true] report proper to be made in the first instance" did not provide a basis for relief. *Id*. at 428. However, the Court cautioned that a court of equity could "afford a remedy for a wrongful invasion of privacy," referencing two Louisiana intermediate appellate court cases temporarily enjoining the police from placing a photograph of an arrestee, who had not been convicted and "who alleged he was innocent and an honest citizen," from being placed in the rogues' gallery. *Id*. at 427-428, citing *Itzkovitch v Whitaker*, 115 La Ann 479; 39 So 499 (1905), and *Schulman v Whitaker*, 115 La Ann 628; 39 So 737 (1905). See also *Detroit Free Press, Inc v Oakland Co Sheriff*, 164 Mich App 656, 666; 418 NW2d 124 (1987) (recognizing that a common-law invasion of privacy suit based on a false-light theory may be pursued when an arrestee is released pretrial and another is convicted if the police thereafter include the arrestee's photograph and fingerprints in the rogues' gallery of convicts).

We glean no common-law rule of entitlement to destruction of an arrest record after acquittal from *Miller*. But assuming such a common-law right existed, we conclude that the Legislature has spoken "in no uncertain terms" that those arraigned for criminal sexual conduct or an offense against a child under 16 years of age are not entitled to the return of biometric data or arrest records. *Moreno*, 491 Mich at 46 (quotation marks and citation omitted).

As originally enacted, what is now MCL 28.423 required law enforcement officials, "immediately upon the arrest of any person for a felony, to take his finger prints . . . and forward the same, together with such other description as may be required and with a history of the offense committed," to the "bureau of criminal identification and investigation." 1925 PA 289, §§ 1 and 3. The act further provided: "Should any accused thereafter be found not guilty of the offense charged, the finger prints and description shall be returned to him upon his request." 1925 PA 289, § 3.

-15-

Subsequently, the Legislature made significant changes to these provisions, including the addition of the following language:

> The provisions of this section requiring the return of the fingerprints, arrest card, and description shall not apply if the person arrested was charged with the commission or attempted commission of a crime, with or against a child under 16 years of age, or the crime of criminal sexual conduct in any degree, [various other offenses,] or the person arrested has a prior conviction except a misdemeanor traffic offense, unless a judge of a court of record, except the probate court, by express order entered on the record, orders the return. [1986 PA 231, § 3.]

With 1988 PA 40, § 3, the Legislature reorganized this provision, creating differential treatment for a person who has a prior conviction:

> The provisions of this section requiring the return of the fingerprints, arrest card, and description shall not apply in the following cases:
>
> > (a) The person arrested was charged with the commission or attempted commission . . . of a crime, with or against a child under 16 years of age, or the crime of criminal sexual conduct in any degree, [or various other offenses].
>
> > (b) The person arrested has a prior conviction except a misdemeanor traffic offense, unless a judge of a court of record, except the probate court, by express order entered on the record, orders the return.

In doing so, the Legislature unequivocally eliminated the opportunity for an acquitted defendant's entitlement to the return of his or her fingerprints, arrest card, and description under any excluded offense other than a prior conviction. 1988 PA 40, § 3. See also *People v Pigula*, 202 Mich App 87, 88-91; 507 NW2d 810 (1993). And although the law has been amended multiple times since 1988, it remains the case that the only circumstance under which "a judge of a court of record . . . [may] order[] the destruction or return of the biometric data and arrest card," is if MCL 28.243(14) precluded destruction on the basis of a prior conviction. MCL 28.243(14)(h).

Accordingly, with 1925 PA 289, the Legislature created a general rule that fingerprints and arrest records are to be returned to a defendant upon acquittal. With 1986 PA 231, the Legislature excepted certain offenses from the general rule, but permitted a defendant to ask a judge to order the return of fingerprints and arrest records, despite an applicable exception. Then, with 1988 PA 40, the Legislature limited the ability to request the return of fingerprints and arrest records to those who fell under the prior-conviction provision. In doing so, the Legislature has made its intention clear: not all people are entitled to the return or destruction of their records, even if acquitted. Admittedly, the Legislature did not say: "We abrogate the common-law right to the return of fingerprints and arrest records." See *Moreno*, 491 Mich at 46 (quotation marks and citation omitted; alteration in original) ("We must presume that the Legislature know[s] of the existence of the common law when it acts."). But if a common-law right did exist, to enforce it when one of the exceptions in MCL 28.243(14) applies would be to render the entire subsection null. See *Moreno*, 491 Mich App at 45 ("In interpreting a statute, this Court avoids constructions that would render any part of the statute surplusage or nugatory."). See also *Bradley v Saranac*

*Comm Schs Bd of Ed*, 455 Mich 285, 301; 565 NW2d 650 (1997) ("[A]n applicable statute always surmounts a conflicting common-law rule."). For these reasons, defendant is not entitled to relief.

Defendant's ancillary-authority argument is likewise unpersuasive. Defendant recognizes that in *People v Guthrie*, 317 Mich App 381, 394; 894 NW2d 711 (2016), citing *Pigula*, 202 Mich App at 90-91, this Court rejected the "defendant's claims that the trial court had discretion to order the destruction or return of [the] defendant's biometric data and arrest card in the interest of justice" where the statute prohibited such action. In *Pigula*, 202 Mich App at 91, this Court explicitly rejected the defendant's argument "that the circuit court had discretion via ancillary jurisdiction to order the return of [his] arrest records," under a prior version of the MCL 28.243. And this Court explained that the prior statute did "not restrict the circuit court's authority, but, rather, restrict[ed] the authority of police officials concerning the return of arrest records in certain types of cases." *Id*. Accordingly, the "the circuit courts continue to have jurisdiction to enforce [the prior version of the statute] as we have interpreted it." *Id*. The relevant statutory language has not changed, and we reject defendant's argument that the circuit court had equitable jurisdiction to act contrary to the plain language of MCL 28.243(14). MCR 7.215(J)(1). Therefore, the trial court did not abuse its discretion when it denied defendant's motion for destruction of his biometric data and arrest record.

Affirmed.

/s/ Michelle M. Rick
/s/ Amy Ronayne Krause
/s/ Anica Letica

-17-