*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

BARRY ALAN KNOWLES,

      Defendant-Appellant.

UNPUBLISHED
June 22, 2023

No. 359641
Genesee Circuit Court
LC No. 18-043202-FH

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant Barry Alan Knowles appeals as of right his jury-trial conviction of assaulting, resisting, or obstructing a police officer causing injury, MCL 750.81d(2). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 40 months to 15 years in prison. We affirm.

## I. BACKGROUND FACTS

The charge in this case arose from police efforts to address an issue between defendant and his neighbors, Phillip and Crystal Hubbard, on August 4, 2017. According to the Hubbards, the conflict with defendant began after they moved into their home in 2014 and continued for years. In May 2017, Phillip obtained a personal protection order (PPO) prohibiting defendant from (1) appearing at the workplace or residence of Phillip; (2) approaching or confronting Phillip in a public place or on private property; (3) entering onto or remaining on the property owned by Phillip; (4) placing an object on or delivering an object to property owned by Phillip; and (5) threatening to kill or physically injure Phillip.

According to Crystal, on August 4, 2017, defendant screamed and told a visitor to the Hubbards' home that the Hubbards were pedophiles, sex offenders, drug dealers, and "not good people." Phillip testified that defendant was at the end of the Hubbards' driveway when he asked defendant to leave and reminded him that he was in violation of the PPO. Although defendant left, he continued to appear outside the Hubbards' home approximately three or four additional times that day. The prosecution showed home surveillance footage and cell phone footage from that day as the Hubbards testified about defendant's conduct. The home surveillance footage showed that

defendant appeared in front of the Hubbards' home, confronted the Hubbards outside their home, apparently threw glass onto their driveway, entered their yard, and threated harm to the Hubbards. The Hubbards eventually called the police because they believed that defendant's conduct violated the PPO.

Flint Police Officers Albert Essix and Quion Wheeler responded to the call regarding a "disorderly neighbor." The officers spoke with the Hubbards about defendant's actions earlier in the day and were provided with the PPO so they could review it. At this time, defendant allegedly began to cross the street toward the Hubbards' property while yelling at or about the Hubbards. Officer Wheeler believed, on the basis of his observations of defendant, that defendant was violating the PPO. As defendant approached, Officer Wheeler observed something in defendant's hand and was concerned because of the "potentially criminal nature of [defendant's] conduct."

Officer Wheeler initially intended to give defendant an appearance ticket for disorderly conduct. However, as Officer Wheeler walked toward defendant, defendant started running toward his house. Officer Wheeler ordered defendant to stop, but defendant refused the command. Defendant ran to his front porch and opened the front door to his house. Officer Wheeler grabbed defendant to prevent him from going into the house out of concern for the officers' safety. This resulted in both defendant and Officer Wheeler falling over the banister on defendant's porch, which caused an injury to Officer Wheeler's hand. Officer Essix crossed the street and assisted Officer Wheeler with arresting defendant because of the injury Officer Wheeler sustained to his hand.

At trial, the prosecution's theory was that the officers were lawfully attempting to apprehend and arrest defendant for violating the PPO and committing disorderly conduct when he resisted the officers. The jury found defendant guilty as charged.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecutor presented insufficient evidence to establish that the officers' actions were lawful. We disagree.

We review de novo a challenge to the sufficiency of evidence to support a conviction. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). "In examining the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). This Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"The elements of resisting or obstructing a police officer under MCL 750.81d(1) are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotation marks and citation omitted). Additionally, " 'the prosecution must establish that the officers' actions were lawful' as an element of resisting or obstructing a police officer under MCL

750.81d." *Id*., quoting *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012). Finally, to obtain a conviction under MCL 750.81d(2), the prosecution also must establish that the defendant's actions "caus[ed] a bodily injury requiring medical attention or medical care."

To demonstrate the lawfulness of an officer's actions, the prosecution must prove that the officer gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act. See *Moreno*, 491 Mich at 55-56; M Crim JI 13.1(4). "For an arrest to be lawful, the police officer making the arrest must have probable cause, either that a felony or misdemeanor was committed by the individual in the officer's presence, or that a felony or specified misdemeanor (i.e., a misdemeanor punishable by imprisonment for more than 92 days) occurred outside the officer's presence and that the individual in question committed the offense." *People v Vandenberg*, 307 Mich App 57, 69; 859 NW2d 229 (2014). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id*. (quotation marks and citation omitted). Because the legality of an officer's actions is an element of MCL 750.81d(1), it is a question of fact for the jury. *Quinn*, 305 Mich App at 494.

Defendant argues that the prosecution presented insufficient evidence to support a finding that the officers' actions were lawful. Specifically, defendant argues that "the evidence was not sufficient to show that the officers had knowledge that [he] was served with the PPO nor that they had probable cause to believe that he had violated the state [disorderly] person statute or local ordinance regarding disorderly person/conduct in their presence."

With regard to the PPO, MCL 600.2950(22) provides, in relevant part:

If the individual restrained or enjoined has not received notice of the personal protection order, the individual restrained or enjoined must be given an opportunity to comply with the personal protection order before the law enforcement officer makes a custodial arrest for violation of the personal protection order. The failure to immediately comply with the personal protection order is grounds for an immediate custodial arrest. . . .

Moreover, MCL 764.15b provides, in relevant part:

(1) A peace officer, without a warrant, may arrest and take into custody an individual when the peace officer has or receives positive information that another peace officer has reasonable cause to believe all of the following apply:

(a) A personal protection order has been issued under [MCL 600.2950 and 600.2950a] or is a valid foreign protection order.

(b) The individual named in the personal protection order is violating or has violated the order. . . .

To the extent that defendant argues that the officers could not lawfully arrest him for violating the PPO because they did not have knowledge that he was "served" with the PPO, we disagree. MCL 600.2950(22) simply requires that "notice" of the PPO be given before an

individual is arrested. See *Kampf v Kampf*, 237 Mich App 337, 385; 603 NW2d 295 (1999). The PPO in this case, which was admitted into evidence as a trial exhibit, was titled "PERSONAL PROTECTION ORDER (NONDOMESTIC)" and, immediately below that title, had a checkbox next to the term "EX PARTE." The checkbox was not checked. Thus, a momentary glance at the PPO would have revealed that the PPO was not issued ex parte. The logical inference is that the PPO was issued during an ordinary adversarial hearing with defendant present, and as a result, defendant had actual notice of the PPO.[1] At a minimum, because the PPO did not reflect that it was issued ex parte, the officers had probable cause to believe that defendant had actual notice of it.[2]

Further, it is undisputed that the officers were otherwise aware of the existence and terms of the PPO. Officer Wheeler witnessed defendant yell at or about the Hubbards and cross the street towards the Hubbards' yard, possibly while carrying an unknown object in his hands. Crystal testified that she discussed the matter with the officers and showed them "the beginning of the video where [defendant] was standing in front of our house screaming insanities." On the basis of defendant's hostile behavior known to the officers, or at least Officer Wheeler, the officers had probable cause to believe that defendant violated the PPO and therefore may be arrested for that violation.

With regard to disorderly conduct,[3] Flint Ordinance § 31-12 provides, in relevant part:

(5) Persists in disturbing the public peace and quiet by loud or aggressive conduct, having once been clearly informed by persons affected that he is in fact unreasonably causing such a disturbance, provided, however, that notice need not be given when such persons affected reasonably believe that to do so would constitute a risk to their personal safety.

* * *

(8) Knowingly harasses any other person. *HARASS* is defined as any repeated nonverbal conduct which is specifically intended to frighten, embarrass, or anger the person or persons who are the object of such conduct, or which the

---

[1] Indeed, Phillip testified that defendant was present at the hearing.

[2] We acknowledge that the officers did not testify to such an understanding of the PPO. However, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *People v Glenn-Powers*, 296 Mich App 494, 500; 823 NW2d 127 (2012) (quotation marks and citation omitted).

[3] Arguably, because the evidence was sufficient to establish probable cause to arrest defendant for violating the PPO, we need not address the prosecution's alternate theory regarding disorderly conduct. See *People v Asevedo*, 217 Mich App 393, 397-398; 551 NW2d 478 (1996) (explaining that when the prosecution presents two alternate theories of a single element, the evidence need only be sufficient for one theory).

person accused has reason to know is likely to produce such reactions or any repeated verbal communication which by its very utterance inflicts injury or incites an immediate breach of peace. [Emphasis in original.]

The evidence also is sufficient to show a violation of that ordinance in the officers' presence.[4] See MCL 764.15(1)(a) (providing that a peace officer may arrest a person when an "ordinance violation is committed in the peace officer's presence"). Officer Essix testified that he observed defendant "yelling something" across the street. In addition, Officer Wheeler testified that he observed defendant "being very like disorderly and aggressive towards the Hubbards" and that he was "shouting things." Officer Wheeler added that defendant shouted such comments as the Hubbards were "baby rappers."[5] From this testimony, the officers had reason to believe that defendant violated Flint Ordinance § 31-12 by disturbing the public peace and harassing the Hubbards. As a result, they had probable cause to arrest defendant for that violation. While defendant on appeal disputes the accuracy of Officer Wheeler's testimony, we are required to infer that it was accurate and supported the jury's verdict. See *Nowack*, 462 Mich at 400.

Moreover, we note that there was sufficient evidence to support a finding that Officer Wheeler was acting within the scope of his duties and gave defendant a lawful command to stop when defendant ran toward his house as Officer Wheeler approached him. Defendant ignored Officer Wheeler's command and attempted to enter his house. Officer Wheeler continued to ask defendant to stop while struggling with him, but he ignored the commands. Given these circumstances, a rational fact-finder could find beyond a reasonable doubt that the officers gave the defendant a lawful command, were making a lawful arrest, or were otherwise performing a lawful act. See M Crim JI 13.1(4). Therefore, when viewed in the light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction of assaulting, resisting, or obstructing a police officer causing injury.[6]

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that he was denied effective assistance of counsel by trial counsel's failure to request a jury instruction with respect to what constitutes disorderly conduct. We disagree.

---

[4] The prosecution does not address MCL 750.167, the disorderly person statute, so we will assume that the evidence was insufficient to show a violation of that statute.

[5] Presumably, this was an accusation of being baby rapists.

[6] Defendant suggests that he had the Fourth Amendment right to retreat into his own home and not engage with the officers. As discussed above, however, the evidence presented was sufficient to show that the officers had probable cause to perform a warrantless arrest of defendant and that he was given a lawful order to stop. While it is an open question whether a warrantless intrusion into the home in "hot pursuit" would have been justified under these circumstances, see *People v Hammerlund*, 504 Mich 442, 460; 939 NW2d 129 (2019), that is not the issue before us. Defendant does not argue that the location of his arrest violated the Fourth Amendment.

Whether a defendant has been deprived of effective assistance of counsel is "a mixed question of law and fact[.]" *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Appellate courts review the trial court's factual findings for clear error, while questions of constitutional law are reviewed de novo. *Id*. Because defendant failed to move for a new trial or *Ginther*[7] hearing, our review is limited to errors apparent on the existing record. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014).

The United States and Michigan Constitutions provide the right to assistance of counsel. US Const Am VI; Const 1963, art 1, § 20. "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "A defendant must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial." *People v Ortiz*, 249 Mich App 297, 311; 642 NW2d 417 (2001). We presume counsel was effective, and defendant carries a heavy burden to overcome this presumption. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018).

Defendant argues that trial counsel was ineffective by failing to request an instruction about what constitutes disorderly conduct because "such an instruction could have clarified to the jury whether [defendant's] conduct constituted that of a disorderly person."[8] In other words, defendant argues, "the additional instruction would have assisted the jury in evaluating [his] conduct and whether it met the disorderly person statute or ordinance."

During final instructions, the trial court gave the jury the following instruction:

An arrest is legal if it is made by a police officer when the arrestee commits a misdemeanor or an ordinance violation in the police officer's presence. Disorderly person is a misdemeanor criminal offense in the State of Michigan.

The trial court did not elaborate upon the meaning of disorderly person or disorderly conduct.

"Failing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). Arguably, it was reasonable trial strategy for trial counsel to refrain from directing the jury's attention to the precise meaning of disorderly conduct during final instructions. That is, a request for an instruction about disorderly

---

[7] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[8] Defendant does not argue that such an instruction was required as an element of the charged offense.

conduct, if given by the trial court, may have drawn added attention during deliberations to defendant's allegedly unruly behavior.

In any event, defendant has failed to show a reasonable probability that, but for trial counsel's conduct, the outcome of trial would have been different. See *Trakhtenberg*, 493 Mich at 51. It is nominally true, as defendant observes, that whether he was "behaving disorderly when the officers arrived at the Hubbards' home was a central issue." However, the dispute in this regard was whether the officers, in particular Officer Wheeler, accurately testified that defendant was aggressively yelling at or about the Hubbards in the officers' presence. Trial counsel asserted that the officers' testimony was not accurate because it was not fully corroborated by the surveillance footage or the subsequent incident reports. In other words, the dispute was whether defendant actually acted in a belligerent manner. Indeed, trial counsel did not remotely suggest during his closing argument that if the officers accurately testified about defendant, then defendant was nonetheless not a disorderly person. Nor does defendant suggest as much on appeal. Common sense suggests that aggressive and harassing yelling in a neighborhood constitutes disorderly conduct. An additional instruction would not have changed this fact. Therefore, the failure to request an additional instruction regarding disorderly conduct was not prejudicial.

## IV. ADMISSION OF TESTIMONY AND VIDEO FOOTAGE

Lastly, defendant argues that the trial court abused its discretion by allowing the prosecution to play the video footage of defendant's conduct earlier that day and by allowing the Hubbards to testify about the footage and the overall history of their conflict with defendant. Specifically, defendant argues that this evidence was irrelevant, prejudicial, and constituted improper bad-acts evidence. We agree that the trial court abused its discretion but conclude that the error was harmless.

"This Court reviews a trial court's decision to admit or deny evidence for an abuse of discretion." *People v Smith*, 336 Mich App 79, 105; 969 NW2d 548 (2021). An abuse of discretion occurs "when the trial court chooses an outcome falling outside the principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Under MRE 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Arguably, the video footage and the Hubbards' testimony had minimal relevance because it provided the jury with context as to why a PPO was issued and why the officers were present that day. See *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996) ("[I]t is essential that prosecutors and defendants be able to give the jury an intelligible presentation of the full context in which disputed events took place.").

However, this minimal relevance was substantially outweighed by the danger of unfair prejudice. MRE 403 states that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). As defendant argues, the evidence in dispute was not relevant to show the lawfulness of the officers' actions because those actions must be considered

in light of the facts reasonably known to the officers at the time. See *Vandenberg*, 307 Mich App at 69. Thus, although defendant's conduct earlier that day could be considered by the officers in deciding whether to arrest him for violating the PPO, if not arresting him for disorderly conduct, that only is true to the extent that the officers were aware of his earlier conduct when they arrested defendant, see MCL 764.15b(1), and there is nothing in the record showing such knowledge beyond the conversation with the Hubbards. Consequently, the evidence had minimal relevance. On the other hand, allowing the jury to consider the evidence presented the possibility that the jury would confuse the primary legal issue in the case, i.e., whether the arrest was lawful based upon facts reasonably known to the officers at the time. In other words, there was the possibility that the jury could have considered this evidence in deciding whether the officers' conduct was lawful, when it instead only should have considered the facts reasonably known to the officers at the time in deciding whether the officers' conduct was lawful. Therefore, we conclude that the evidence should have been excluded under MRE 403.[9]

Nonetheless, we conclude that reversal is not warranted because it does not "affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999). Although the evidence in dispute undoubtedly presented a possibility of confusion of the issues, the overall issues in this case were nonetheless straightforward. According to the prosecution, defendant was belligerent and aggressive in the officers' presence, yelling insults and threats about the Hubbards. This, the prosecution argued, warranted the officers' conduct in seeking to apprehend and ultimately arrest defendant. To the contrary, according to defendant, the evidence does not show that he committed such extreme conduct in the officers' presence. Defense counsel asserted during closing argument that Officer Wheeler should not be considered a credible witness and that Officer Essix did not provide particularly incriminating testimony against defendant. Thus, the jury was aware of the underlying disagreement, and the final instructions were consistent with that disagreement. Under these circumstances, in which the jury essentially was charged simply to consider the extent to which defendant acted aggressively in the officers' presence, evidence about his conduct earlier that day or before that day was not outcome determinative.

## V. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello

---

[9] Having so concluded, we need not address defendant's argument that the evidence also was inadmissible under MRE 404(b).