*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JACK RAYMOND SMOTHERS,

Defendant-Appellant.

UNPUBLISHED
December 03, 2025
2:51 PM

No. 368626
Kalamazoo Circuit Court
LC No. 2022-002024-FH

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of assaulting, resisting, or obstructing a police officer causing bodily injury requiring medical attention, MCL 750.81d(2). Defendant argues that his conviction should be reversed because he received ineffective assistance of counsel at trial. We disagree, and therefore affirm.

## I. BACKGROUND AND FACTS

This case arises out of defendant's arrest by Deputy Timothy Randall of the Kalamazoo County Sheriff's Office at Galesburg's city hall on November 1, 2022. According to the testimonies of Galesburg's treasurer and city clerk, defendant arrived at city hall, smelling of alcohol and shouting obscenities, looking for Deputy Randall. Deputy Randall was, at that time, investigating an allegation that defendant had recently committed an assault at a different location. The city clerk called Deputy Randall and informed him that defendant was at city hall.

Deputy Randall arrived and confronted defendant with the intent of arresting him for the alleged assault. Deputy Randall testified that he told defendant that he was under arrest and that defendant pulled away when Deputy Randall tried to grab defendant's wrist to place him in handcuffs. Witnesses observed Deputy Randall then take defendant to the floor where the two struggled for nearly ten minutes. In addition, the officer's body camera captured footage of the incident that was shown to the jury. Deputy Randall repeatedly told defendant that he was under arrest and admonished defendant to stop resisting. Multiple times during the struggle, Deputy Randall used his Taser on defendant. While pinned to the ground, defendant, using slurred speech, repeatedly asked Deputy Randall to get off him, asked for help, and near the end of the encounter,

-1-

stated that he came to city hall to vote. Eventually, another Kalamazoo County sheriff's deputy arrived on the scene and took defendant into custody. During the struggle, Deputy Randall suffered bruises, scrapes to his knees, and a cut to his left hand. Deputy Randall went to the hospital that day to be examined; he was released later that evening with no serious injuries or stitches.

At trial, Deputy Randall testified that he called for backup because of his past experiences with defendant during his job as a sheriff's deputy. The prosecution asked Deputy Randall why he used his Taser against defendant. In response, Deputy Randall stated, among other reasons, that defendant had a "history" and had threatened Deputy Randall's life. On cross-examination, defense counsel asked Deputy Randall about his history with defendant. Deputy Randall testified that he had encountered defendant several times; he stated that defendant had violated city ordinances, had been arrested on warrants, had threatened to shoot him, and had generally frightened the people of Galesburg. When asked about whether defendant was at city hall to vote, he said, "I believe Mr. Smothers is a felon. He can't vote."[1] During closing arguments, defense counsel argued that Deputy Randall tackled defendant to the ground and used excessive force against him without giving defendant an opportunity to comply with Deputy Randall's commands because Deputy Randall disliked defendant. However, Deputy Randall denied having any bias against defendant.

After closing arguments ended, the trial court instructed the jury on defendant's charge as follows:

In Count I, the defendant is charged with the crime of assaulting, battering, wounding, resisting, obstructing, opposing, or endangering a police officer who was performing his duties. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered Timothy Randall, who was a police officer. "Obstruct" includes the use or threatened use of physical interference or force, or a knowing failure to comply with a lawful command. The defendant must—must have actually resisted by what he said, what he did—or what he did, but physical violence is not necessary. Police officers includes [sic] a deputy sheriff.

Second, that the defendant knew or had reason to know that Timothy Randall was a police officer performing his duties at the time.

Third, that Timothy Randall gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act.

_____

[1] Deputy Randall was likely mistaken. Under Michigan law, a felony conviction is not a disqualification from voting after the individual has been released from confinement. See Const 1963, art 2, § 2; MCL 168.758b.

Fourth, that the defendant's act in assault, [sic] battering, wounding, resisting, obstructing, opposing, or endangering a police officer caused a bodily injury requiring medical attention or medical care to Timothy Randall.

Neither party objected to the court's instructions. Nor did the parties object to the trial court's instruction regarding evidence of defendant's prior bad acts:

You have heard evidence that was introduced to show that the defendant committed a crime or improper act or acts for which he's not on trial.

If you believe this evidence, you must be careful only to consider it for certain purposes. You may only think about whether this evidence tends to show that the second and third elements of Count I have been met.

You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the defendant is a bad person, or that he's likely to commit crimes. You must not convict the defendant here, because you think he's guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find him not-guilty.

During deliberations, the jury asked to following questions: "What is a lawful command?"; "We cannot agree on all elements, what do we do now?"; and "Is timing critical when a lawful command is given?" The trial court did not give the jury any supplemental instructions in response to these questions. Neither side took issue with the trial court's response to the jury's questions.

The jury ultimately found defendant guilty. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 1 year and 8 months to 15 years' imprisonment. This appeal followed.

## II. STANDARD OF REVIEW

"Claims of ineffective assistance of counsel present mixed questions of fact and law. Factual findings are reviewed for clear error, and legal conclusions are reviewed de novo." *People v Urbanski*, 348 Mich App 90, 97; 17 NW3d 430 (2023) (citation omitted). Because no evidentiary hearing was held on this issue, our review is limited to mistakes apparent on the record. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

## III. ANALYSIS

Defendant argues that defense counsel was ineffective for failing to request special jury instructions and for failing to object to the admission of improper evidence of his prior bad acts. On both points, we disagree.

"Criminal defendants are entitled to the assistance of counsel under both the Michigan and United States Constitutions." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023).

Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). To prevail on a claim of ineffective assistance, a defendant must "show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome [of the defendant's trial] would have been different." *Yeager*, 511 Mich at 488 (quotation marks and citation omitted). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015), quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

We presume that defense counsel's strategic decisions at trial were sound and will evaluate defense counsel's performance without the benefit of hindsight. *Urbanski*, 348 Mich App at 97. "[F]ailing to raise an objection may be consistent with a sound trial strategy." *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel." *Isrow*, 339 Mich App at 532.

## A. JURY INSTRUCTIONS

Defendant first argues that counsel performed ineffectively by failing to request special instructions regarding Deputy Randall's authority to arrest him and defendant's right to resist an unlawful arrest.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013) (quotation marks and citation omitted). A trial court "must properly instruct the jury so that [the jury] may correctly and intelligently decide the case. The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (quotation marks and citations omitted; alteration in original). "[F]ailure to request a jury instruction may constitute an unreasonably deficient level of performance." *Yeager*, 511 Mich at 490.

To prove a defendant guilty of violating MCL 750.81d, the prosecution must prove beyond a reasonable doubt that "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing [their] duties." *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014) (quotation marks and citation omitted). The prosecution must also prove that a resulting injury that the officer suffered required medical attention or care. See MCL 750.81d(2). Additionally, "the prosecution must establish that the officers' actions were lawful." *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624 (2012). Because the lawfulness of the arrest is an element of the criminal offense, it is a question of fact for the jury. *People v Quinn*, 305 Mich App 484, 494; 853 NW2d 383 (2014).

Here, the jury was given the standard jury instructions for resistance and obstruction. M Crim JI 13.1. While the jury was instructed that they must determine "that Timothy Randall gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act," defendant challenges trial counsel's failure to request a special instruction to clarify that Deputy Randall could only execute a warrantless arrest if he had probable cause that a felony or 93-day misdemeanor had been committed and that defendant had committed it. See MCL 764.15(1)(d). In addition, defendant believes that counsel performed ineffectively by failing to request a special instruction to clarify defendant's right to proportionately resist the unlawful use of force.

One such pertinent instruction is M Crim JI 13.5, which addresses the legality of an arrest without a warrant in the context of a resisting/obstructing charge and provides, in relevant part, as follows:

> (2) An arrest is legal if it is made [*describe circumstances for a warrantless arrest found in MCL 764.15, 764.15a, 764.15b, 764.15e, 769.15f*].

> "Reasonable cause" means having enough information to lead an ordinarily careful person to believe that the defendant had committed a crime.

MCL 764.15 details when a police officer may arrest a suspect without a warrant and provides, in relevant part, as follows:

> (1) A peace officer, without a warrant, may arrest a person in any of the following situations:

> \* \* \*

> (d) The peace officer has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony has been committed and reasonable cause to believe the person committed it.

A person has the common-law right to resist an unlawful arrest. *Moreno*, 491 Mich at 40.

We agree that the jury instructions were lacking as they did not provide a rubric for determining whether Deputy Randall's actions were lawful. "As recognized by the Model Criminal Jury Instructions, a jury cannot meaningfully assess whether an officer acted lawfully without 'detailed legal instructions regarding the applicable law governing the officer's legal authority to act.' " *People v Carroll*, 514 Mich 851, 851; 8 NW3d 576 (2024), quoting M Crim JI 13.1, Use Note 4. "Leaving the jury without a legal framework for assessing whether the officers' actions were lawful does not 'fairly present[] the issues to be tried and adequately protect[] the defendant's rights.' " *Carroll*, 514 Mich at 851, quoting *People v Kowalski*, 489 Mich 488, 501-502; 803 NW2d 200 (2011).

That said, whether counsel's failure to request special instructions constitutes ineffective assistance of counsel under the circumstances of this case is another matter. See *Carroll*, 514 Mich at 851-852 (remanding to the Court of Appeals to determine whether trial counsel's failure to request "detailed legal instructions regarding the applicable law governing the officer's legal

-5-

authority to act" violated the *Strickland* test). Trial counsel's strategy entailed directing the jury's attention to the force and manner of defendant's arrest, and specifically to whether defendant was given an opportunity to comply with a lawful command. In closing, counsel stated: "You saw the video. Soon as the door opens, Deputy Randall goes forward, [defendant] backs up and they go to the ground. What opportunity did [defendant] have to comply with any kind of legal command[?]" Counsel also urged the jury "to consider did [defendant] have an opportunity to comply with the lawful command, or did Deputy Randall look for an opportunity to come in and take somebody down that he did not like."

Counsel did not explicitly challenge the lawfulness of the command itself. This was reasonable trial strategy given the evidence that a lawful command was given. See *Isrow*, 339 Mich App 522. Deputy Randall's testimony indicated that he had reasonable cause to believe that defendant had committed an assault that Deputy Randall was investigating just before the incident. Deputy Randall described this alleged crime as "aggravated assault," a misdemeanor punishable by imprisonment for not more than one year. See MCL 750.81a. Warrantless arrests for such offenses, when based on reasonable cause, are lawful. See MCL 764.15(1)(d).[2]

By omitting an instruction on the lawfulness of the arrest and instead focusing on the circumstances of the arrest and defendant's ability to comply, counsel capitalized on the vagueness of whether the command was lawful, without drawing the jury's attention to a likely conclusion that it was lawful. This inference is supported by the jury's question, "What is a lawful command?" Nor may counsel have wished to draw more attention to evidence that defendant committed another assaultive crime. In addition, in the absence of an instruction on defendant's right to resist an unlawful arrest, the jury could plausibly consider whether defendant was resisting an unlawful arrest, when in fact, the evidence supported that the arrest was lawful. See *Moreno*, 491 Mich at 40. Defense counsel's strategy appears to have, at least partially, worked; the questions posed by the jury during deliberations show that the jury was conflicted regarding whether Deputy Randall gave defendant appropriate time to comply with his commands and whether those commands were lawful. Even though defense counsel's trial strategy did not ultimately prevail, it was not objectively unreasonable.

Relatedly, even assuming that defense counsel's failure to request special instructions was below an objective standard of reasonableness for effective assistance of counsel, defendant does not show that there is a reasonable probability that it was outcome-determinative. As discussed, all the evidence points to the conclusion that Deputy Randall was executing a lawful arrest; there is nothing to suggest that the arrest was unlawful. Therefore, even if a special instruction had been requested and granted, the jury would likely have concluded that Deputy Randall lawfully arrested defendant and that defendant resisted and injured Deputy Randall in the execution of his duties as a sheriff's deputy.

---

[2] Even simple assault and battery, punishable by imprisonment for not more than 93 days, MCL 750.81, would have sufficed to give Deputy Randall authority to arrest defendant without a warrant. See MCL 764.15(1)(d); *People v Glenn-Powers*, 296 Mich App 494, 501; 823 NW2d 127 (2012).

In short, defense counsel's failure to request further jury instructions was not objectively unreasonable, and there was no reasonable probability of a different result had defense counsel requested the jury instructions. On these facts, defendant's right to effective assistance of counsel was not violated. See *Yeager*, 511 Mich at 488.

## B. PRIOR BAD-ACTS EVIDENCE

Defendant next argues that counsel performed ineffectively by failing to object to the admission of prior bad-acts evidence.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.[3] Evidence that is relevant is admissible unless prohibited by the United States Constitution, the Michigan Constitution, the Michigan Rules of Evidence, or another rule prescribed by the Michigan Supreme Court. MRE 402. Irrelevant evidence is not admissible. *Id.*

The former version of MRE 404(b)(1), governing the admissibility of prior bad-acts evidence, provided as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Evidence that is otherwise admissible may still be excluded if the probative value of the evidence is substantially outweighed by a danger of unfair prejudice to the defendant. MRE 403. Michigan law permits cross-examination regarding any facts or circumstances that show the bias of a witness in favor of, or against, a party or another witness. *People v Layher*, 464 Mich 756, 768; 631 NW2d 281 (2001).

Defendant argues that several references to his prior alleged conduct, including prior arrests, his "threaten[ing]" and "frighten[ing]" past behavior, and his status as "a felon" were irrelevant and unfairly prejudicial. Deputy Randall testified on direct examination about defendant's history without being asked to do so. For example, when he was asked to describe what led to him deploying his Taser, he veered into discussing defendant's history that allegedly included threatening Deputy Randall's life and similar behavior with residents of Galesburg. During cross-examination, defense counsel intentionally elicited some of Deputy Randall's testimony regarding defendant's prior bad acts. For example, counsel specifically asked how many

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

interactions Deputy Randall previously had with defendant and asked follow-up questions about those interactions, which elicited information about other times that defendant was arrested. Deputy Randall's comment that defendant "is a felon, he can't vote" was nonresponsive and provided in response to counsel's question about whether absentee ballots were available that day.

As discussed, defense counsel's trial strategy was to convince the jury that Deputy Randall did not give defendant an opportunity to comply before tackling defendant and using excessive force to arrest him. A key aspect of this strategy was to show that Deputy Randall was biased against defendant because of their history with one another. This is evident from counsel's line of questioning on cross about the parties' previous dealings. Also, defense counsel's closing argument highlighted that Deputy Randall seemed "excited" to recount defendant's prior bad acts to the jury. Accordingly, defense counsel suggested that Deputy Randall's statement that he did not dislike defendant was not credible. Counsel stressed Deputy Randall's repeated statement to defendant—"stop resisting"—asking, "[w]ho's performing for the camera. Is it [defendant] or it is Deputy Randall?"

Some of the bad-acts evidence was likely admissible regardless of whether defense counsel had objected. Deputy Randall's allegation that defendant committed an assault earlier that day, for example, was relevant to the lawfulness of defendant's arrest. Because that evidence was relevant, was not offered for an impermissible propensity purpose, and was not substantially more prejudicial than probative, it would not have been excluded had defense counsel objected. By contrast, defendant's status as a felon, his history with Deputy Randall, and the allegation that he had been frightening the people of Galesburg were not relevant to the elements of the charge, but they were relevant to defendant's strategy of demonstrating Deputy Randall's alleged bias against defendant. Thus, even if some of the testimony may have been excluded had defense counsel objected, defense counsel had strategic reasons to refrain from objecting. See *Isrow*, 339 Mich App at 532. And many of the remarks were made in passing and it was reasonable trial strategy not to object when doing so could have drawn more attention to them—for example, Deputy Randall's comment that defendant had made a previous threat against his life.

Nor does it appear from the record that the prosecution intended to offer evidence of defendant's prior bad acts; as discussed, Deputy Randall's testimony during direct examination regarding defendant's prior bad acts was not responsive to the questions asked. Even if defense counsel could have objected and successfully excluded that evidence because the prosecution did not provide notice as then required by MRE 404(2), that would have been counter to defense counsel's strategy.

Moreover, even if there was a risk that the evidence of defendant's prior bad acts would improperly influence the jury, the trial court's instruction to the jury not to consider that evidence for an impermissible, character purpose cleansed any error. A limiting instruction instructing the jury to consider such evidence "only for proper, noncharacter purposes pursuant to MRE 105" is "generally suffic[ient] to enable the jury to compartmentalize evidence and consider it only for its proper purpose." *People v Mardlin*, 487 Mich 609, 629; 790 NW2d 607 (2010) (cleaned up). "[J]urors are presumed to follow their instructions." *Urbanski*, 348 Mich App at 104.

On these facts, we cannot conclude that defense counsel's failure to object to the admission of evidence of defendant's prior bad acts was objectively unreasonable or that there was a

reasonable probability that the jury would have acquitted defendant had defense counsel objected. Consequently, defendant's right to effective assistance of counsel was not violated. See *Yeager*, 511 Mich at 488.

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin